PUBLISHED

COURT OF APPEALS OF VIRGINIA

Present:   Judges Humphreys, Beales and McCullough
Argued at Richmond, Virginia

DAVID CARLTON WRIGHT

v.      Record No. 0947-12-2

LAURA McGAHEY ROBERTS WRIGHT                    OPINION BY
                                          JUDGE RANDOLPH A. BEALES
                                             FEBRUARY 19, 2013
LAURA McGAHEY ROBERTS WRIGHT

v.      Record No. 0958-12-2

DAVID CARLTON WRIGHT


FROM THE CIRCUIT COURT OF THE CITY OF RICHMOND
Melvin R. Hughes, Jr., Judge

Edward D. Barnes (Ann Brakke Campfield; Brandy M. Poss;
Barnes & Diehl, P.C., on briefs), for David Carlton Wright.

Ronald R. Tweel (Elizabeth P. Coughter; Michie Hamlett Lowry
Rasmussen & Tweel, PLLC, on briefs), for Laura McGahey Roberts
Wright.


In these domestic appeals, which have been consolidated by this Court, David Carlton

Wright (husband) and Laura McGahey Roberts Wright (wife) appeal the final decree entered by

the Circuit Court of the City of Richmond (trial court) on April 26, 2012.

In his appeal (Record No. 0947-12-2), husband argues that the trial court erred in

awarding wife a reservation of spousal support rights, in deriving the marital share of the value

of husband's law practice at Hunton & Williams LLP, where husband is an equity partner, and in

awarding wife a portion of husband's supplemental retirement plan (SRP) that arises from his

partnership agreement with Hunton & Williams.[1]  In her appeal (Record No. 0958-12-2), wife argues that the trial court erred in declining to select the date of the parties' separation as an alternate valuation date for valuing two marital accounts for equitable distribution purposes, in finding that husband properly expended marital funds following the parties' separation while at the same time preserving his post-separation income, and in finding that wife was entitled only to a defined-duration spousal support award of four years following a marriage of twenty-two years.  Moreover, both parties seek an award of appellate attorneys' fees.

---

[1] We have summarized husband's assignments of error – which, in their entirety, including subparts, fully encompass two pages of his opening brief on appeal.  More specifically (without repeating certain allegations that husband lists more than once in his assignments of error), husband alleges:

(1) that the trial court should have found that wife waived her right to request a reservation of spousal support rights because she did not make such a request "until after she rested her case and the [trial] court ruled on the matter";

(2) that the trial court "erred in failing to define a timeframe for the reservation awarded to wife" and that "[a]ny reservation granted to Wife should be for a period no longer than one-half of the length of time between the date of the marriage and the date of separation";

(3) that the trial court "erred in classifying Husband's SRP as marital property and in awarding Wife 25% of Husband's SRP" because the SRP "has no marital value," husband "had no interest in the SRP" at the time of the final decree, and, even if husband "is awarded an interest in the SRP, the award could be based entirely on his post-separation earnings and, therefore, entirely his separate property";

(4) that the trial court "erred in awarding Wife 25% of the SRP as opposed to 25% of the marital share of the SRP"; and,

(5) that the trial court "erred in accepting Wife's expert's valuation of Husband's interest in his law practice; in finding that Wife's expert's opinion was more credible, entitled to greater weight and better focused on intrinsic value than Husband's valuation; and in valuing that interest at $1,492,000" because (a) the valuation accepted by the trial court "erroneously used the 'bottom-up' approach even though the relevant financial data was available to the evaluator," (b) this valuation "neither properly valued nor accounted for Husband's personal goodwill," (c) this valuation "failed to tax effect accounts receivable and work in progress," (d) this valuation "used a comparison group of attorneys and firms which were not comparable to Husband and his practice," and (e) this valuation "assumed an increase in Husband's income which included Husband's separate post-separation earnings and assumed an increase in Husband's income ignoring the testimony that he is subject to a reduction in income, and ignoring the undisputed evidence of his intention to retire at age sixty-one."

As his sixth assignment of error, which we treat as a request for appellate attorney's fees and costs, husband contends that he is entitled to such fees and costs on appeal.

For the following reasons, we affirm in part, reverse in part, and remand the matter to the trial court for further proceedings consistent with this opinion.

## I. BACKGROUND[2]

The parties married in August 1986, had three daughters during the marriage,[3] and separated in July 2008, at which time they resided in the City of Richmond.[4] Following the parties' divorce trial in December 2010, the trial court issued two letter opinions, dated February 3, 2012 and March 29, 2012. The trial court then entered the April 26, 2012 final decree, from which both parties now appeal.

Husband, an attorney, joined Hunton & Williams in 1991 and became an equity partner there in 1994. Husband is the head of that law firm's Capital Real Estate Finance Group and is compensated at the third-highest compensation level out of the sixteen compensation levels for equity partners. Robert Raymond, C.P.A., who provided expert testimony for wife at the parties' divorce trial, opined that the marital value of husband's law practice at Hunton & Williams was worth approximately $1,492,000. The trial court accepted this value for equitable distribution purposes, finding it was more credible than the value of $502,887 provided by husband's expert, Gregory Lawson, C.P.A.

---

[2] Under settled principles, we view the evidence in the light most favorable to the prevailing party in the trial court, granting to that party the benefit of any reasonable inferences. Congdon v. Congdon, 40 Va. App. 255, 258, 578 S.E.2d 833, 835 (2003). Thus, for these consolidated appeals, the evidence related to the issues raised in husband's appeal is viewed in the light most favorable to wife as the prevailing party below – and the evidence related to the issues raised in wife's appeal is viewed in the light most favorable to husband as the prevailing party below.

[3] At the time that the final decree was entered, only one of the parties' daughters was still a minor. Child support is not an issue in these appeals.

[4] Wife filed the initial divorce complaint in this matter in 2008, and husband thereafter filed an answer and cross-complaint. The parties later agreed to amend their respective complaints to reflect the divorce grounds of living separate and apart continuously for more than one year.

Husband has three retirement accounts with Hunton & Williams – only one of which, the supplemental retirement plan (SRP), is pertinent to this appeal. The trial court initially found in its February 3, 2012 letter opinion that the SRP was not subject to equitable distribution because "it does not vest until the future, if at all." Wife filed a written motion for reconsideration concerning this and other issues, and, following a hearing, the trial court found in the March 29, 2012 letter opinion that the SRP contained marital property. In the final decree, the trial court awarded "wife 25 percent [of the SRP] under the deferred distribution method approach when and if the account is payable upon vesting." The final decree does not distinguish between the value of the marital share of the SRP and the SRP's total value.

Wife holds an undergraduate degree in economics from Duke University, *magna cum laude*, and a Master's degree in Business Administration (M.B.A.) from the University of Virginia, but she did not obtain regular employment outside the home after the parties' children were born. She was a homemaker, was the children's caretaker, and helped coordinate entertainment for husband's business interests. Husband's vocational expert, Peder Melberg, opined that wife, despite her long absence from the workforce, was employable in several fields and could foreseeably earn $85,000 annually if she were to become an established financial services representative. In addition to disputing this assessment, wife testified that she had no intention of seeking employment, explaining instead that she engages in volunteer work every day.

Wife requested $30,000 in monthly spousal support for an undefined duration. The trial court in its February 3, 2012 letter opinion awarded wife $10,000 in monthly spousal support for a defined, four-year period – noting that this award gave wife "a reasonable time to establish employment by acquiring and updating skills for entry into the job market." The trial court did not revisit this ruling in the March 29, 2012 letter opinion, although it did grant wife a

reservation of future spousal support rights – which was relief that wife had requested in her written motion for reconsideration and at the hearing that followed. Wife requested the presumptive length for such a reservation under Code § 20-107.1(D) – i.e., one-half the length of time between the date of the marriage and the date of the separation. However, neither the March 29, 2012 letter opinion nor the April 26, 2012 final decree indicates the length of the reservation awarded to wife.

At the divorce trial, wife contended that the trial court should use the date of separation – not the date of the evidentiary hearing in the trial court – as the date for valuing two accounts (the Ameritrade account and the Bank of America account) that were titled in husband's name but that wife claimed were marital property. Wife alleged that husband had unfairly diminished the value of these accounts following the parties' separation – thereby rendering the date of their separation a more equitable date for valuing the marital share of those accounts. Although the trial court found that the Ameritrade and Bank of America accounts were marital property, the trial court found no good cause for valuing these accounts as of the date of the parties' separation. The trial court recognized in its March 29, 2012 letter opinion that wife's argument dealt with marital "equity, not waste," but the trial court found that husband's use of the Ameritrade and Bank of America funds was proper under the circumstances.

## II. ANALYSIS

### A. HUSBAND'S APPEAL (RECORD NO. 0947-12-2)

#### 1. ISSUES RELATING TO THE RESERVATION OF SPOUSAL SUPPORT RIGHTS

In his first two assignments of error, husband challenges the trial court's decision to reserve wife's right to receive spousal support in the future. Thus, to address these assignments of error on appeal, we must consider the spousal support statute, Code § 20-107.1, which states in pertinent part:

C. The [trial] court, in its discretion, may decree that maintenance and support of a spouse be made in periodic payments for a defined duration, or in periodic payments for an undefined duration, or in a lump sum award, or in any combination thereof.

D. In addition to or in lieu of an award pursuant to subsection C, the court may reserve the right of a party to receive support in the future.[5] In any case in which the right to support is so reserved, there shall be a rebuttable presumption that the reservation will continue for a period equal to 50 percent of the length of time between the date of the marriage and the date of separation. Once granted, the duration of such a reservation shall not be subject to modification.

(Footnote added).

### a. Decision to Award Wife the Reservation

In his first assignment of error, husband argues that wife abandoned any claim to a reservation of spousal support rights under Code § 20-107.1(D) because she did not specifically request a reservation of spousal support rights in her divorce complaint, in any of her notices or other pleadings filed with the trial court prior to the divorce trial, or during the parties' divorce trial. Instead, wife first requested a reservation of spousal support rights in her motion to reconsider the trial court's February 3, 2012 letter opinion. Following a hearing on the motion to reconsider, the trial court then awarded wife this reservation in its subsequent March 29, 2012 letter opinion.

Husband recognizes that "[d]ecisions concerning [spousal] support rest within the sound discretion of the trial court and will not be reversed on appeal unless plainly wrong or unsupported by the evidence." Calvert v. Calvert, 18 Va. App. 781, 784, 447 S.E.2d 875, 876 (1994). Husband argues that the trial court's decision to award wife a reservation of spousal support rights here was plainly wrong. Husband claims that the trial court should have ruled that wife's request simply came too late in the proceedings. However, husband's argument is

---

[5] Consistent with Code § 20-107.1, the trial court awarded wife a reservation of spousal support rights *in addition to* its award of a four-year period of spousal support to wife.

foreclosed by this Court's opinion in <u>Vissicchio v. Vissicchio</u>, 27 Va. App. 240, 498 S.E.2d 425 (1998).

In <u>Vissicchio</u>, one of the parties (Mrs. Vissicchio) requested permanent spousal support in her pleadings and continued to request spousal support at trial. When Mrs. Vissicchio's counsel submitted the draft decree to the trial court, the draft decree included a reservation of future spousal support rights for her. The trial court then deleted this specific provision from the final decree, without explaining why it had denied a reservation of spousal support rights for Mrs. Vissicchio. <u>Id.</u> at 254, 498 S.E.2d at 432. On appeal, this Court held that the trial court in <u>Vissicchio</u> committed reversible error. This Court explained that Mrs. Vissicchio's request for a reservation of spousal support rights was implicit in her request for spousal support, that there was no legal barrier to Mrs. Vissicchio receiving spousal support, and that the trial court erred in refusing her request in the draft decree to reserve the right to receive spousal support in the event of a change in circumstances. <u>Id.</u> at 254-55, 498 S.E.2d at 432-33 (citing <u>Blank v. Blank</u>, 10 Va. App. 1, 4, 389 S.E.2d 723, 724 (1990); <u>Bacon v. Bacon</u>, 3 Va. App. 484, 491, 351 S.E.2d 37, 41 (1986)).

Here, wife (like Mrs. Vissicchio) requested an award of spousal support in her divorce complaint. <u>See</u> <u>Vissicchio</u>, 27 Va. App. at 254, 498 S.E.2d at 432 ; <u>cf.</u> <u>Harrell v. Harrell</u>, 272 Va. 652, 658, 636 S.E.2d 391, 395 (2006) ("Ms. Harrell had no valid pleading before the trial court requesting permanent spousal support. *Without such a pleading*, it was error for the trial court to grant a reservation of spousal support to her pursuant to Code § 20-107.1(D)." (emphasis added)). Furthermore, as in <u>Vissicchio</u>, the record on appeal contains no legal barrier prohibiting wife from receiving spousal support. <u>See</u> <u>Vissicchio</u>, 27 Va. App. at 254, 498 S.E.2d at 432. The parties here specifically agreed in a consent decree that neither party was barred from

seeking spousal support. Moreover, as in <u>Vissicchio</u>, a request for a reservation of spousal

support rights was communicated to the trial court in time for it to act.[6] <u>See</u> <u>id.</u>

Neither <u>Vissicchio</u> nor any other authority relied upon by husband supports his argument

that a request for a reservation of spousal support rights made in a motion for reconsideration is

untimely (when, as here, that party has already requested spousal support in his or her pleadings

and there is no bar prohibiting that party from receiving spousal support). Given these

circumstances, the trial court's decision to award wife a reservation of spousal support rights was

appropriate under this Court's holding in <u>Vissicchio</u> and did not constitute an abuse of its

discretion.[7]

### b. Duration of the Reservation

In his second assignment of error, husband argues that, even if the trial court had

authority to award wife a reservation of spousal support rights, the trial court still committed

reversible error because the duration of the awarded reservation is unclear from the trial court's

rulings on this subject and could be construed to have no end date. We agree with husband's

interpretation of the trial court's March 29, 2012 letter opinion and April 26, 2012 final decree

(neither of which indicates the duration of the spousal support reservation) – and also agree with

husband's argument that the trial court committed reversible error on this specific issue under the

circumstances presented here.

---

[6] In fact, wife's request in this case was communicated sooner and much more directly
than the request that was made in <u>Vissicchio</u>. Unlike in <u>Vissicchio</u> – where the request was
simply inserted within a draft decree – wife specifically noted her reservation request in her
written motion for reconsideration of the trial court's February 3, 2012 letter opinion. Following
a hearing, the trial court granted wife a reservation of spousal support rights in its March 29,
2012 letter opinion.

[7] To the extent that husband seeks the decision in <u>Vissicchio</u> to be overruled, "[u]nder the
interpanel accord doctrine, the decision of one panel becomes a predicate for application of the
doctrine of *stare decisis* and cannot be overruled except by the Court of Appeals sitting *en banc*
or by the Virginia Supreme Court." <u>Atkins v. Commonwealth</u>, 54 Va. App. 340, 343 n.2, 678
S.E.2d 834, 835 n.2 (2009) (internal quotation marks and citations omitted).

Code § 20-107.1(D) states that "there shall be a rebuttable presumption that the reservation will continue for a period equal to 50 percent of the length of time between the date of the marriage and the date of separation." The parties here were married in August 1986, and the trial court found that they separated in July 2008 – a span of nearly twenty-two years. Thus, under Code § 20-107.1(D), there exists a rebuttable presumption that the appropriate period for a reservation of wife's spousal support rights equals one-half of the period from the date of marriage to the date of separation – i.e., nearly eleven years in this case.

A rebuttable presumption "may be overcome by the introduction of contrary evidence." Black's Law Dictionary 1205 (7th ed. 1999); see Miller v. Commonwealth, 172 Va. 639, 651, 2 S.E.2d 343, 348 (1939) (stating that a non-conclusive presumption "may be rebutted or overcome with opposing or contradictory evidence"). Even viewing the evidence in the light most favorable to wife as the prevailing party on this issue in the trial court, the record on appeal does not support rebutting the statutory presumption of Code § 20-107.1(D) that "the reservation will continue for a period equal to 50 percent of the length of time between the date of the marriage and the date of separation."[8] Indeed, wife never requested the trial court to order a reservation of spousal support duration longer than the presumptive period under the statute.

Accordingly, we must reverse the portion of the final decree pertaining to the reservation of wife's future spousal support rights, as the statutory presumptive reservation period set forth in Code § 20-107.1(D) was not rebutted. We remand the matter to the trial court for a "clear and explicit" ruling on the appropriate length of the reservation of spousal support rights awarded to wife based on the circumstances of this case. Poliquin v. Poliquin, 12 Va. App. 676, 681, 406 S.E.2d 401, 404 (1991). On remand, the trial court shall award wife a reservation of spousal

_____

[8] At the hearing on wife's motion to reconsider the February 3, 2012 letter opinion, wife's trial counsel acknowledged that this statutory presumption would apply "unless somebody presents evidence to rebut that." Wife then never presented any evidence that a reservation period greater than the statutory presumptive period was appropriate.

support rights for a period no longer than the statutory presumptive period of one-half of the length of time between the date of the marriage and the date of separation – which was the relief wife sought in her written motion for reconsideration and at the hearing on wife's motion for reconsideration. See Irwin v. Irwin, 47 Va. App. 287, 298 n.10, 623 S.E.2d 438, 444 n.10 (2005) ("Courts can only grant relief requested.").

## 2. ISSUES RELATING TO EQUITABLE DISTRIBUTION

Among the requirements of the equitable distribution statute, Code § 20-107.3, a trial court shall "determine the legal title as between the parties, and the ownership and value of all property, real or personal, tangible or intangible, of the parties and shall consider which of such property is separate property, which is marital property, and which is part separate and part marital" property. Code § 20-107.3(A). Thus, Code § 20-107.3 "'mandates' that trial courts determine the ownership and value of all real and personal property of the parties." Bowers v. Bowers, 4 Va. App. 610, 617, 359 S.E.2d 546, 550 (1987) (quoting Hodges v. Hodges, 2 Va. App. 508, 516, 347 S.E.2d 134, 139 (1986)).

"In reviewing an equitable distribution award on appeal, we have recognized that the trial court's job is a difficult one, and we rely heavily on the discretion of the trial judge in weighing the many considerations and circumstances that are presented in each case." Klein v. Klein, 11 Va. App. 155, 161, 396 S.E.2d 866, 870 (1990). Accordingly, "decisions concerning equitable distribution rest within the sound discretion of the trial court and will not be reversed on appeal unless plainly wrong or unsupported by the evidence." McDavid v. McDavid, 19 Va. App. 406, 407-08, 451 S.E.2d 713, 715 (1994); see Srinivasan v. Srinivasan, 10 Va. App. 728, 732, 396 S.E.2d 675, 678 (1990). Moreover, "[i]t is well established that the trier of fact ascertains a witness' credibility, determines the weight to be given to their testimony, and has the discretion

to accept or reject any of the witness' testimony." Street v. Street, 25 Va. App. 380, 387, 488 S.E.2d 665, 668 (1997) (*en banc*).

### a. The Hunton & Williams SRP

In his third assignment of error, husband argues that the trial court erred in finding that the Hunton & Williams SRP contains marital property when and if it vests. In his fourth assignment of error, husband argues that, even if part of the SRP's value can be classified as marital when and if it vests, the trial court erred in awarding wife twenty-five percent of its entire value – as opposed to a percentage of *the marital share* of its value. The parties agree that these assignments of error concern Code § 20-107.3, which states in pertinent part:

> The [trial] court may direct payment of *a percentage of the marital share of any pension, profit-sharing or deferred compensation plan or retirement benefits, whether vested or nonvested, which constitutes marital property* and whether payable in a lump sum or over a period of time. The court may order direct payment of such percentage of the marital share by direct assignment to a party from the employer trustee, plan administrator or other holder of the benefits. However, the court shall only direct that payment be made as such benefits are payable. No such payment shall exceed 50 percent of the marital share of the cash benefits actually received by the party against whom such award is made. *"Marital share" means that portion of the total interest, the right to which was earned during the marriage and before the last separation of the parties*, if at such time or thereafter at least one of the parties intended that the separation be permanent.

Code § 20-107.3(G)(1) (emphasis added).

### i. Whether a Marital Share can be Determined

The trial court classified the SRP as "marital property" and found, therefore, that the SRP was subject to equitable distribution under Code § 20-107.3(G)(1), even though husband's eligibility to receive retirement benefits under the SRP has not yet vested. The trial court's finding that the SRP contains marital property ("when and if the account is payable upon vesting") is accorded deference on appeal because it was a factual finding by the trial court.

- 11 -

"Because the trial court's classification of property is a finding of fact, that classification will not be reversed on appeal unless it is plainly wrong or without evidence to support it." Ranney v. Ranney, 45 Va. App. 17, 31-32, 608 S.E.2d 485, 492 (2005).

Viewing the evidence in the light most favorable to wife, as we must since she was the prevailing party below on this issue, the trial court's classification of the SRP was supported by evidence in the record on appeal. Testifying for wife, Mr. Raymond explained that the SRP is "a nonqualified plan" under which husband was eligible to receive "about [$]125,000 a year for five to seven years," subject to some limitations. These limitations were explained by John Wilson (Hunton & Williams' Director of Financing and Accounting) and J. Waverly Pulley, III (a member of Hunton & Williams' Executive Committee), who testified as husband's witnesses.

Mr. Wilson testified that Hunton & Williams equity partners have no immediate right or entitlement to benefits under the SRP prior to their retirement at age sixty-five and also testified that, "in order to get the SRP, if they retire before the age of 65, they have to have the Executive Committee's approval to retire." Mr. Wilson stated that the benefits payable under the SRP amount to "a percentage of the high five share of profits, up to a maximum of $125,000 for five years if you retire at 65" – explaining that the "high five share" is the "average of the five highest [years of] earnings" from that equity partner.

Mr. Pulley described the SRP provision as a benefit offered to equity partners as "sort of a carrot to stay" at Hunton & Williams. Mr. Pulley testified that "[a]ge 65 is the trigger" for SRP eligibility, adding that "there's always a measure of discretion in the Executive Committee as to whether to award the SRP even if you're age 65."[9] Mr. Pulley mentioned only one additional requirement for eligibility under the SRP (aside from retiring at age sixty-five) – that an equity partner who has retired from Hunton & Williams must honor a non-compete agreement in order

_____

[9] Mr. Pulley testified that age sixty-five is normally the mandatory retirement age for Hunton & Williams equity partners.

to receive benefits under the SRP. Thus, Mr. Pulley characterized husband's eligibility to receive benefits under the SRP as "presumptive if he's a good boy." On cross-examination, Mr. Pulley testified that, to his knowledge, no Hunton & Williams equity partner had retired at age sixty-five and not received benefits under the SRP.

The plain language of Code § 20-107.3(G)(1) authorizes trial courts to "direct payment of a percentage of the marital share of *any pension, profit-sharing or deferred compensation plan or retirement benefits, whether vested or nonvested*, which constitutes marital property and whether payable in a lump sum or over a period of time." (Emphasis added). Virginia's courts must apply the "cardinal rule of statutory construction" that "a statute be construed from its four corners," First Virginia Bank v. O'Leary, 251 Va. 308, 312, 467 S.E.2d 775, 777 (1996), and courts may never construe statutory language "in a way that effectively holds that the General Assembly did not mean what it actually expressed," Hicks v. Mellis, 275 Va. 213, 218, 657 S.E.2d 142, 144 (2008). Both this Court and the Supreme Court have recognized that Code § 20-107.3(G) reflects the General Assembly's "intention to treat uniformly *all plans of compensation*, whether payable upon retirement or not, if payment is deferred to the future but earned during the marriage." Dietz v. Dietz, 17 Va. App. 203, 214, 436 S.E.2d 463, 470 (1993) (emphasis added); see also Schuman v. Schuman, 282 Va. 443, 448, 717 S.E.2d 410, 412 (2011) ("As the Court of Appeals correctly states, the legislature clearly intended for the delineated plans of compensation to be treated uniformly.").

Based on the evidence before the trial court describing when and how the SRP benefits would become payable to husband, the trial court could reasonably find that the SRP at issue here contains marital value falling within the scope of Code § 20-107.3(G)(1), especially as that statute also applies to retirement benefits that have not yet vested. We disagree with husband's contention that benefits under the Hunton & Williams SRP are not only not yet vested, but are

- 13 -

also entirely *unearned*, until they are actually awarded by the Hunton & Williams Executive Committee following the equity partner's retirement. This contention does not give due consideration to the fact that one must first *become* and then *remain* an equity partner at Hunton & Williams even to become potentially eligible to receive SRP benefits. Given Mr. Pulley's testimony describing the SRP as "a carrot" offered to equity partners to convince them "to stay" at Hunton & Williams, the evidence supports a reasonable inference that SRP benefits are continually being *earned* by the equity partner and are eventually paid as a "return for work done or services rendered." See Webster's Third New International Dictionary 714 (1981) (defining "earn").

Viewing the evidence in the light most favorable to wife, her efforts contributed to husband's successful efforts to attain an equity partnership with Hunton & Williams and then to his continuing efforts to grow his very successful real estate investment trust practice there.[10] Husband became an equity partner in Hunton & Williams back in 1994 – eight years into the marriage. The parties separated in 2008. Although husband's eligibility to receive SRP benefits is conditioned upon his continued employment as an equity partner at Hunton & Williams, husband became an equity partner during the marriage and then maintained equity partner status for a span of fourteen years prior to the date of the parties' separation. The evidence supports a finding that some reasonably identifiable portion of the SRP's value in retirement benefits (when and if they become payable) "was earned during the marriage and before the last separation of the parties" here. Code § 20-107.3(G)(1).

---

[10] The trial court found that wife not only "devoted her time to being a housewife and mother," participating "first-hand in the rearing, caring, and upbringing of the children," but also found that wife "supported husband in his family and business, for example, coordinating entertainment for his business associates in the marital home."

*ii. Limiting the Award to the Marital Share of the SRP*

> [U]nless it appears from the record that the trial judge has abused his discretion, that he has not considered or *has misapplied one of the statutory mandates*, or that the evidence fails to support the findings of fact underlying his resolution of the conflict in the equities, the equitable distribution award will not be reversed on appeal.

Blank, 10 Va. App. at 9, 389 S.E.2d at 727 (emphasis added).  While evidence in the record supports the trial court's *classification* of the SRP, the trial court committed reversible error in the April 26, 2012 final decree when it awarded wife twenty-five percent of the SRP's total value (when and if it vests) – rather than limiting this award to *the marital share* of the SRP.

By statutory mandate, awards entered under Code § 20-107.3(G)(1) are limited to "*the marital share* of any pension, profit-sharing or deferred compensation plan or retirement benefits, whether vested or nonvested, which constitutes marital property and whether payable in a lump sum or over a period of time."  We accept as appropriate wife's concession on appeal that this matter must be remanded to the trial court for correction of the SRP award so as to comply with the requirements of Code § 20-107.3(G)(1).  See Mosley v. Mosley, 19 Va. App. 192, 198, 450 S.E.2d 161, 165 (1994) (holding reversible error occurred because "the trial judge awarded wife fifty percent of the total pension").

"[R]etirement and pension plans, by their nature and diversity, present unique problems in a division of marital wealth, and the task of the trial court in making an equitable distribution of such benefits is not an easy one."  Banagan v. Banagan, 17 Va. App. 321, 324-25, 437 S.E.2d 229, 231 (1998) (internal quotation marks and citation omitted).  We agree with the trial court's finding in its final decree that the "deferred distribution method approach" is an appropriate method for determining the marital share of the SRP in this case.  See Torian v. Torian, 38 Va. App. 167, 176, 562 S.E.2d 355, 360 (2002) (describing the deferred distribution approach as awarding  a "percentage of the marital share of the pension, in which case payment is to be made

- 15 -

only as retirement benefits are paid"). Furthermore, we disagree with husband's argument on brief that a "coverture fraction" cannot be used to determine a marital share of the SRP's value.

Typically,

> the term "coverture fraction" refers to a fraction or percentage used to determine the marital portion of a benefit plan, usually defined as the time during the marriage that the spouse was employed by the company providing the benefit (the numerator) divided by the total time of the spouse's employment with that company (the denominator).

Lewis v. Lewis, 53 Va. App. 528, 532 n.2, 673 S.E.2d 888, 890 n.2 (2009); see also Mann v. Mann, 22 Va. App. 459, 464-65, 470 S.E.2d 605, 607 (1996); Primm v. Primm, 12 Va. App. 1036, 1037, 407 S.E.2d 45, 46 (1991). The purpose of using a coverture fraction is to "effectively exclude[] from the marital share the income earned by pre- and post-marital contributions to the pension." Mann, 22 Va. App. at 465, 470 S.E.2d at 607-08; see Schuman, 282 Va. at 448, 717 S.E.2d at 412 (citing Mann and explaining that a coverture fraction can be used for retirement plans other than pensions).

The "'function of the [circuit court] is to arrive at a fair and equitable monetary award based on the equities and the rights and interests of each party in the marital property.'" Fadness v. Fadness, 52 Va. App. 833, 841, 667 S.E.2d 857, 861 (2008) (quoting Mitchell v. Mitchell, 4 Va. App. 113, 118, 355 S.E.2d 18, 21 (1987)). Based on the evidence in the record here, benefits awarded under the SRP are not based on the length of the equity partner's *employment* with Hunton & Williams. Instead, eligibility to receive SRP benefits is predicated on being an equity partner with Hunton & Williams and then retiring, usually at the age of sixty-five, and receiving the SRP with Executive Committee approval. Thus, it is fair and equitable to both parties that the marital share of the SRP value reflect *only* the period of time after which husband became an equity partner – in short, the period of time during the marriage that husband was an equity partner prior to the separation of the parties.

- 16 -

Accordingly, on remand, the trial court shall order that, if and when the SRP is received by husband, the marital share of the SRP shall be determined using the following fraction – the numerator shall be the number of years that husband has been an equity partner with Hunton & Williams that occurred during the marriage prior to the separation of the parties, and the denominator shall be the total number of years husband has been an equity partner with Hunton & Williams at the time he retires and the SRP award is approved by the firm to be made to husband. Once the marital share is calculated, the actual award to wife "cannot exceed fifty percent of this amount." Mosley, 19 Va. App. at 198, 450 S.E.2d at 165; see Code § 20-107.3(G)(1).

### b. Marital Value of Husband's Law Practice

In his fifth assignment of error, husband argues that the trial court committed reversible error when it found that the marital value of husband's financial interest in his law practice was $1,492,000. The trial court accepted this valuation from Robert Raymond (wife's expert) over that of Gregory Lawson (husband's expert), who opined that the marital value of husband's law practice was $502,887. On appeal, husband challenges Mr. Raymond's methodology and asserts that the trial court should have found Mr. Lawson's opinion more credible.

Code § 20-107.3(A) requires trial courts to "determine the legal title as between the parties, and the ownership and value of all property, real or personal, tangible or intangible, of the parties and shall consider which of such property is separate property, which is marital property, and which is part separate and part marital property . . . ." This statute "does not define the term, 'value,' for equitable distribution purposes." Howell v. Howell, 31 Va. App. 332, 338, 523 S.E.2d 514, 517 (2000). In Bosserman v. Bosserman, 9 Va. App. 1, 384 S.E.2d 104 (1989), this Court held that "[t]rial courts valuing marital property for the purpose of making a monetary award must determine from the evidence that value which represents the property's intrinsic

worth" to the parties. Id. at 6, 384 S.E.2d at 107. "Intrinsic value is a very subjective concept that looks to the worth of the property to the parties." Howell, 31 Va. App. at 339, 523 S.E.2d at 517. Determining intrinsic value must depend on the facts of the case. Id. "We affirm if the evidence supports the findings and if the trial court finds a reasonable evaluation based on proven methodology and on the application of it to the particular facts of the case." Id.

In addition, when a trial court values a professional practice, it must consider the presence of goodwill. See Russell v. Russell, 11 Va. App. 411, 416, 399 S.E.2d 166, 168 (1990). "The value of goodwill can have two components." Howell, 31 Va. App. at 344, 523 S.E.2d at 520. "Professional goodwill (also designated as individual, personal, or separate goodwill) is attributable to the individual and is categorized as separate property in a divorce action." Id. "Practice goodwill (also designated as business or commercial goodwill) is attributable to the business entity, the professional firm, and may be marital property." Id. "In valuing the goodwill of the partnership interest, courts must take special care not to confuse the owner spouse's personal future earning capacity with practice goodwill attributable to the law firm in order to avoid double counting." Id.; see Russell, 11 Va. App. at 417, 399 S.E.2d at 168.

In this case, Mr. Raymond used a method of valuation called "bottom-up." Use of this methodology was approved by this Court in Howell (which also involved determining the marital value of the law practice of a Hunton & Williams equity partner),[11] where it was also called the excess earnings method. In Howell, the Court described this methodology accordingly:

> The wife's expert began by comparing the husband's average
> income for three years to that of a peer group. The difference
> between the two was the excess earnings due to the husband's
> association with the firm, but not the earnings due to his personal

---

[11] Although this Court's opinion in Howell does not identify the prevailing party's expert in that case, both parties here acknowledge that the expert there was Mr. Raymond – wife's expert in this case.

efforts. It was the additional income he received from being associated with his law firm. The wife's expert projected those excess earnings over the husband's expected career with Hunton & Williams. Using the discounted future earnings method, he then calculated the present value of the husband's total future excess earnings.

Howell, 31 Va. App. at 342, 399 S.E.2d at 519. Although the husband in Howell argued "that this method, described as working from the 'bottom up,' is incorrect," this Court held that the trial court in that case was entitled to find that the bottom-up methodology was an accurate way to determine the professional practice's intrinsic value under the circumstances of that case. Id. at 343, 399 S.E.2d at 519-20.

Here, husband argues that the circumstances in Howell were distinguishable from those in this case. In particular, husband notes that the "bottom-up" method was used in Howell in large part due to "the unavailability of partnership financial data," which had been successfully quashed by the law firm in that case. Id. at 343, 399 S.E.2d at 520. Mr. Raymond's testimony at the parties' divorce trial here strongly suggests that he had more financial information at his disposal in this case. However, to the extent that husband contends that the "bottom-up" methodology is *only* appropriate when pertinent financial data has been quashed or is otherwise unavailable, neither Howell nor any other authority suggests such a rule.

In the absence of controlling authority directing trial courts that the "bottom-up" methodology can only be used in a limited class of cases, the issue here is no different than any other factual issue that the trial court decides after considering and weighing the evidence. Such decisions "rest within the sound discretion of the trial court and will not be reversed on appeal unless plainly wrong or unsupported by the evidence." McDavid, 19 Va. App. at 407-08, 451 S.E.2d at 715; see Code § 8.01-680.

The trial court in this particular case was entitled to find as credible and give appropriate weight to Mr. Raymond's testimony at the parties' divorce trial that the "bottom-up"

methodology is preferred over other approaches and is the "approach that I've used in valuing virtually every professional practice, large or small, certainly for the last 10, 15 years." After considering both experts' assessments, the trial court specifically found that Mr. Raymond's opinion was "better reasoned and more credible" than Mr. Lawson's, that Mr. Raymond's approach had a "better focus on intrinsic value," and that it was "more persuaded by [Mr. Raymond's] estimation of goodwill" because Mr. Raymond "better isolated institutional goodwill by determining what an attorney's law firm interest value with husband's skill, knowledge, and experience value would be if he was in a firm that lacked the attributes of husband's law firm."[12] The trial court considered, but rejected, husband's criticisms of Mr. Raymond's methods – while also finding that "the adjustments and discounts that husband's expert applies are arbitrary."[13] These findings were not plainly wrong or without evidence to support them.

> The evidence presented at trial determines the result, and the result may vary from case to case as the evidence differs. If conflicting, competent evidence is presented, that found more credible will determine whether goodwill exists and its value if it does exist. The existence is not fixed as a matter of law, nor is the method of valuation; both are functions of the fact finding process.

Howell, 31 Va. App. at 340-41, 520 S.E.2d at 518.

Therefore, under the settled standard of review on appeal, we will not disturb the trial court's credibility determinations of the expert witnesses and their testimony – or the trial court's

---

[12] Mr. Raymond's valuation assessment, which the trial court accepted, did not derive a value for husband's personal goodwill. While husband on appeal considers this an omission amounting to reversible error, we note that the trial court explained in the final decree that it "can only take cognizance of *institutional* goodwill," a marital asset. (Emphasis added). Given this explanation, and viewing the evidence in the light most favorable to wife (as the prevailing party below on this assignment of error), we conclude that no part of husband's *personal* goodwill was included in calculating the equitable distribution award pertaining to these parties.

[13] Furthermore, the trial court, acting as factfinder, was not required to accept or give significant weight to husband's testimony that he intended to retire at age sixty-one.

resulting finding that the marital value of husband's interest in his law practice at Hunton & Williams was $1,492,000 at the time of its valuation.

## B. WIFE'S APPEAL (RECORD NO. 0958-12-2)

### 1. WHETHER THERE IS PROCEDURAL DEFAULT

Husband argues that all three of wife's assignments of error are procedurally defaulted. These assignments of error contend that the trial court "erred as a matter of law" in various respects. Husband asserts that this Court cannot consider these assignments of error because wife never actually informed the trial court that it was committing errors as a matter of law when it ruled against her on what she indicated in the trial court were discretionary matters. Thus, husband contends that wife did not preserve the issues corresponding to her assignments of error with the specificity required under Rule 5A:18. He also contends that wife fails to satisfy Rule 5A:20 because he claims that her opening brief on appeal does not contain any argument or authority to support her contention that the trial court erred as a matter of law.

Rule 5A:18 states that "[n]o ruling of the trial court . . . will be considered as a basis for reversal unless an objection was stated with reasonable certainty at the time of the ruling, except for good cause shown or to enable the Court of Appeals to attain the ends of justice." Rule 5A:20(e) requires an appellant's opening brief to contain "[t]he standard of review and the argument (including principles of law and authorities) relating to each assignment of error." Wife's objections to the trial court's rulings that correspond to her assignments of error were stated with reasonable certainty, and her opening brief identifies the standard of review on appeal and appropriate principles of law and authorities to address those issues. While wife's

- 21 -

assignments of error could perhaps be stated more artfully, the issues raised within them are not

procedurally defaulted for any reason that is alleged by husband[14] under the Rules of Court.[15]

### 2. VALUATION DATE AND ALLEGEDLY INEQUITABLE USE OF MARITAL FUNDS

In her first assignment of error, wife argues that the trial court committed reversible error

when it declined to use an alternate valuation date for the Ameritrade and Bank of America

accounts. In her second assignment of error, wife argues that the trial court committed reversible

error when it found that husband had properly spent significant marital funds totaling

approximately $1,400,000 from the Ameritrade[16] and Bank of America[17] accounts to pay his

---

[14] This Court is in receipt of husband's notice to the Court of an additional authority husband requested the Court to consider after oral argument in this case – i.e., this Court's recent published opinion in Fox v. Fox, 61 Va. App. 185, 734 S.E.2d 662 (2012). We conclude that the decision in Fox is inapplicable to the issues before us here.

[15] To the extent that husband identifies a distinction between committing error as a matter of law and committing an abuse of discretion, the Supreme Court has explained that a discretionary decision means "'that the court has a range of choice, and that its decision will not be disturbed as long as it stays within that range and is not influenced by any *mistake of law*.'" Landrum v. Chippenham & Johnston-Willis Hosps., Inc., 282 Va. 346, 352, 717 S.E.2d 134, 137 (2011) (emphasis added) (quoting Kern v. TXO Production Corp., 738 F.2d 968, 970 (8th Cir. 1984)); see also Porter v. Commonwealth, 276 Va. 203, 260, 661 S.E.2d 415, 445 (2008) (explaining that a trial court "'by definition abuses its discretion when it makes an error of law. . . . The abuse-of-discretion standard includes review to determine that the discretion was not guided by erroneous legal conclusions.'" (quoting Koon v. United States, 518 U.S. 81, 100 (1996))).

[16] The Ameritrade account had a balance of $2,695,275 when the parties separated on July 11, 2008. At the time of the December 2010 evidentiary hearing, the marital portion of the Ameritrade account balance was $1,410,939.77. Between the date of the separation and the date of the evidentiary hearing, husband spent $834,335 of the Ameritrade funds in this account on payment of state and federal taxes for 2008 and 2009 on the parties' jointly filed tax returns. Husband also made post-separation payments from the Ameritrade account for real estate taxes for the marital home, for tuition and other school expenses for the parties' youngest daughter, for spousal support payments to wife, and for husband's attorney's fees and expert fees related to the divorce litigation.

[17] The Bank of America account had a balance of $105,610.75 at the time of the parties' separation. At the time of the evidentiary hearing in the trial court, the account balance was $5,178. Most of husband's payments from this account between the date of separation and the date of the hearing went to pay the mortgage payment on the marital home. Husband also

personal expenses and spousal support when she claims that husband had the means to make such payments from his post-separation earnings from Hunton & Williams or from other separate property sources. The premise underlying both of these assignments of error is that husband, in wife's view, should have paid for post-separation expenses from his *separate* funds (rather than from the marital Ameritrade and Bank of America accounts) because he amassed significant separate funds after the separation.

### a. Determining the Valuation Date

The trial court "in evaluating marital property should select a valuation 'that will provide the Court with the most current and accurate information available which avoids inequitable results.'" Gaynor v. Hird, 11 Va. App. 588, 593, 400 S.E.2d 788, 790-91 (1991) (quoting Mitchell v. Mitchell, 4 Va. App. 113, 118, 355 S.E.2d 18, 21 (1987)). "The value of the assets determined as near as practicable to the date of trial will usually be the most current and accurate value available." Id. Code § 20-107.3(A) reflects the General Assembly's clear preference that martial property is valued as of the date of the evidentiary hearing in the trial court, unless good cause is shown for an alternate date. Code § 20-107.3 states in pertinent part:

> [T]he court, upon request of either party, (i) shall determine the legal title as between the parties, and the ownership and value of all property, real or personal, tangible or intangible, of the parties and shall consider which of such property is separate property, which is marital property, and which is part separate and part marital property in accordance with subdivision A 3. . . . *The court shall determine the value of any such property as of the date of the evidentiary hearing on the evaluation issue. . . . Upon motion of either party made no less than 21 days before the evidentiary hearing the court may, for good cause shown, in order to attain the ends of justice, order that a different valuation date be used.*

Code § 20-107.3(A) (emphasis added).

---

testified that tuition and taxes may have also been paid out of this account at times following the separation of the parties.

"On appeal, we review the court's determination of a valuation date for abuse of discretion." Thomas v. Thomas, 40 Va. App. 639, 647, 580 S.E.2d 503, 506 (2003). "We have often recognized that the trial court's job is a difficult one, and we rely heavily on the discretion of the trial judge in weighing the many considerations and circumstances that are presented in each case." Robbins v. Robbins, 48 Va. App. 466, 482, 632 S.E.2d 615, 623 (2006) (internal quotation marks and citation omitted). "[O]nly when reasonable jurists could not differ can we say an abuse of discretion has occurred." Id. (internal quotation marks and citation omitted).

In Clements v. Clements, 10 Va. App. 580, 397 S.E.2d 257 (1990), this Court addressed circumstances in which using an alternate valuation date may be necessary due to the dissipation of marital assets by one of the spouses after the separation of the parties. This Court explained, "Dissipation occurs where one spouse uses marital property for his own benefit and for a purpose unrelated to the marriage at a time when the marriage is undergoing an irreconcilable breakdown." Id. at 586, 397 S.E.2d at 261 (internal quotation marks and citation omitted); see Booth v. Booth, 7 Va. App. 22, 28, 371 S.E.2d 569, 573 (1988) ("[I]n the case of [marital] assets wasted in anticipation of separation or divorce, . . . equity can only be accomplished if the party who last had the funds is held accountable for them."). "Once the aggrieved spouse shows that marital funds were either withdrawn or used after the breakdown, the burden rests with the party charged with dissipation to prove that the money was spent for a proper purpose." Clements, 10 Va. App. at 586, 397 S.E.2d at 261. Thus, this Court held in Clements:

> [T]he burden is on the party who last had the funds to establish by a preponderance of the evidence that the funds were used for living expenses or some other proper purpose. If the party is unable to offer sufficient proof, the court must value the property at a date other than the date of the evidentiary hearing so as to achieve an equitable result.

Id. at 587, 397 S.E.2d at 261.

*b. No Waste of Marital Assets Occurred Here*

There appears to be no dispute among the parties in this case that husband actually met the burden described above in Clements for establishing that marital funds were spent on proper purposes following the separation of the parties. Wife recognized in the trial court and recognizes on appeal to this Court that the waste of marital assets has not been established here – i.e., she recognizes that husband used the disputed marital assets for purposes that are actually considered proper under controlling Virginia case law. See Thomas, 40 Va. App. at 645-46, 580 S.E.2d at 506 (explaining that the expenditure of marital funds for court-ordered spousal support payments "is for a valid marital purpose and does not constitute dissipation of marital assets in a deliberate attempt to affect a monetary award"); Clements, 10 Va. App. at 587, 397 S.E.2d at 262 (explaining that household expenses and child's tuition expenses are proper purposes); see also Anderson v. Anderson, 29 Va. App. 673, 695, 514 S.E.2d 369, 381 (1999) (explaining that mortgage payments are expenditures for a proper purpose); Amburn v. Amburn, 13 Va. App. 661, 666, 414 S.E.2d 847, 850 (1992) (explaining that payments for "attorney's fees for the divorce proceedings" are expenditures for a proper purpose). As is the case in several previous decisions of this Court that we have noted, "[t]his is not a case involving a deliberate waste of marital assets." Amburn, 13 Va. App. at 666, 414 S.E.2d at 850.

Nevertheless, wife argues that marital funds from the Ameritrade and Bank of America accounts were inequitably spent by husband after the parties' separation, given the particular facts of this case. Wife claims that husband *could* have made these expenditures from his own separate funds – especially in light of husband's high compensation level at Hunton & Williams, which Mr. Pulley described as "pretty rarified air." In essence, wife argues that husband's post-separation choice of expending money from the Ameritrade and Bank of America accounts – *rather than from his own separate funds* – unfairly diminished the parties' marital equity in

those accounts following the parties' separation, thereby reducing the value of the marital funds that were subject to equitable distribution by the time of the evidentiary hearing.

Wife cites no controlling Virginia authority in support of this argument. Virginia's appellate case law recognizes two categories of post-separation expenditures of marital assets: (1) expenditures for proper purposes, and (2) waste. There is not a third category under Virginia's appellate case law – and we decline to hold, based on the circumstances of this case, that the trial court was required, as a matter of law, to consider the extent of husband's post-separation income or other separate assets in determining whether husband unfairly diminished marital assets following the parties' separation.[18]

### c. Good Cause Determination is a Discretionary Decision

Code § 20-107.3(A) states that the trial court "shall determine the value of any such property as of the date of the evidentiary hearing on the evaluation issue" unless, "for good cause shown, in order to attain the ends of justice, the trial court "order[s] that a different valuation date be used." "A good cause determination invests a trial court with discretion." AME Fin. Corp. v. Kiritsis, 281 Va. 384, 392, 707 S.E.2d 820, 824 (2011) (citing Stephens v. Commonwealth, 274 Va. 157, 162, 645 S.E.2d 276, 278 (2007)); see also, e.g., Emrich v. Emrich, 9 Va. App. 288, 292, 387 S.E.2d 274, 276 (1989). "[A] circuit court's determination"

---

[18] During oral argument before this Court on appeal, wife's counsel was unable to articulate any income threshold or other guideline for directing trial courts when they must, as a matter of law, find that marital assets have been unfairly diminished following a separation and in anticipation of a divorce by a spouse who earns a considerable salary or otherwise has significant separate assets at his or her disposal. Such a determination surely must be made, if at all, in the trial court. Here, the trial court, in the exercise of its discretion, ultimately decided not to credit husband for the full $259,021 that he repaid the Ameritrade account with his own separate funds. The trial court's initial February 3, 2012 letter opinion granted husband a credit for this full amount, finding that husband had not committed marital waste. However, following wife's motion for reconsideration, the trial court recognized that wife's argument "was about equity, not waste," and added $95,838 to wife's equitable distribution award "based on the percentage of distribution already determined." Husband did not appeal this specific ruling to this Court.

on the presence or absence of good cause "must be supported by evidence in the record." Stephens, 274 Va. at 163, 645 S.E.2d at 278; see Goodhand v. Kildoo, 37 Va. App. 591, 599, 560 S.E.2d 463, 466 (2002) (explaining that, "when a court hears evidence at an *ore tenus* hearing, its decision is entitled to great weight and will not be disturbed on appeal unless plainly wrong or without evidence to support it" and that "the burden is on the moving party to show a right to the relief sought").

Here, the trial court specifically found that "no good cause has been shown" to use an alternate valuation date for the Ameritrade and Bank of America accounts. This finding was not plainly wrong or unsupported by the evidence. Husband spent money from these accounts for proper purposes, as discussed *supra*. To the extent that wife specifically challenges husband's use of funds from the Ameritrade account to pay for spousal support and attorney's fees, the trial court did not abuse its discretion in finding that husband was not required to use his separate funds to pay for these expenses. Furthermore, the record indicates that significant portions of the Ameritrade and Bank of America account expenditures were paid to satisfy the parties' joint tax obligations[19] and the mortgage for the marital home. Such payments reduced the parties' *marital* debt, which contributed to the marital funds that were subject to equitable distribution. Moreover, the trial court was aware that, at the outset of the divorce trial, husband had paid wife $525,000 from his own separate funds for her share of the marital home. This payment was received by wife *in addition* to the assets she received through equitable distribution.

Based on all of these circumstances, therefore, we cannot conclude that the trial court abused its discretion when it found no good cause for selecting an alternate valuation date for valuing the marital funds in the Ameritrade and Bank of America accounts that were subject to

---

[19] We note that, even on the parties' 2009 tax forms, following their separation, the parties' filing status was listed as "[m]arried filing jointly."

equitable distribution.  Accordingly, we find that the trial court did not err in the manner alleged by wife in her first two assignments of error.

### 3. DEFINED-DURATION SPOUSAL SUPPORT AWARD

In her third assignment of error, wife argues that the trial court committed reversible error when it awarded her a defined-duration spousal support award of $10,000 per month for a four-year period.  Wife contends that limiting the spousal support award to a four-year period was not supported by the evidence in this case.  We disagree with wife's contention that the trial court erred in this regard, especially in light of the deferential standard of review on appeal.  See Calvert, 18 Va. App. at 784, 447 S.E.2d at 876 ("Decisions concerning [spousal] support rest within the sound discretion of the trial court and will not be reversed on appeal unless plainly wrong or unsupported by the evidence.").

Code § 20-107.1 states in pertinent part:

> C.  The [trial] court, in its discretion, may decree that maintenance and support of a spouse be made in periodic payments for a defined duration, or in periodic payments for an undefined duration, or in a lump sum award, or in any combination thereof.
>
>     *      *      *      *      *      *      *
>
> F.  In contested cases in the circuit courts, any order granting, reserving or denying a request for spousal support shall be accompanied by written findings and conclusions of the court identifying the factors in subsection E which support the court's order.  If the court awards periodic support for a defined duration, such findings shall identify the basis for the nature, amount and duration of the award and, if appropriate, a specification of the events and circumstances reasonably contemplated by the court which support the award.

Here, the trial court awarded defined-duration spousal support, as permitted by Code § 20-107.1.  The trial court identified the terms, basis, and statutory factors favoring a defined-duration award, as Code § 20-107.1 required it to do.  Furthermore, the trial court's

selection of a four-year term for the spousal support award was supported by evidence in the record.

Wife holds an M.B.A. degree from the University of Virginia and was regularly employed during the early portion of the parties' marriage. She contends that she has been rendered essentially unemployable because she earned her M.B.A. degree too long ago and argues her departure from the workforce has been too lengthy. Husband presented expert testimony to the contrary. Husband's expert, Peder Melberg, testified that wife could earn between $36,000 to $56,000 in an entry-level financial services position with the opportunity to advance to an $85,000-per-year position if she were to become an established financial services representative. In its role as factfinder, the trial court was entitled to accept Mr. Melberg's testimony. See Street, 25 Va. App. at 387, 488 S.E.2d at 668 (explaining that the factfinder "ascertains a witness' credibility, determines the weight to be given to their testimony, and has the discretion to accept or reject any of the witness' testimony"). It was also permitted to make reasonable inferences from wife's testimony that she did not intend to find employment.[20] See Congdon v. Congdon, 40 Va. App. 255, 258, 578 S.E.2d 833, 835 (2003) (explaining that the appellate court views the evidence in the light most favorable to the prevailing party below, granting to that party the benefit of any reasonable inferences).

Viewing the evidence in the light most favorable to husband (as we must since he was the prevailing party on this issue), the trial court was permitted to find that wife *could* successfully return to the workforce – even if she did not intend to do so.[21] Under the governing standard of review on appeal, the trial court did not err in directing a four-year defined duration of spousal

---

[20] Indeed, at oral argument before this Court, wife's counsel confirmed, in response to a question from the Court, that she had been clear to the trial court that she would not seek employment.

[21] The trial court was also aware that husband had made a payment of $525,000 to wife that represented her interest in the marital home and that wife also had significant separate assets.

support for wife that, in the words of the trial court, gave wife "a reasonable time to establish employment by acquiring and updating skills for entry into the job market." Although *some* jurists conceivably could have selected a lengthier duration for the spousal support award, nothing in the record here supports a conclusion that *all* reasonable jurists simply "could not differ" in the opinion that the trial court erred on this issue. See Robbins, 48 Va. App. at 482, 632 S.E.2d at 623. Accordingly, we cannot conclude that the trial court abused its discretion here.

### C. APPELLATE ATTORNEYS' FEES AND COSTS

Both parties request an award of appellate attorneys' fees and costs. "The appellate court has the opportunity to view the record in its entirety and determine whether [an] appeal is frivolous or whether other reasons exist for requiring additional payment." O'Loughlin v. O'Loughlin, 23 Va. App. 690, 695, 479 S.E.2d 98, 100 (1996). Upon consideration of the record on appeal, we do not deem either party's appeal to be frivolous or see other reasons sufficient to warrant an award of attorneys' fees and costs. Therefore, we deny each party's request for such an award.

### III. CONCLUSION

For the reasons stated above, we affirm the trial court's April 26, 2012 final decree in all respects, except for its failure to identify the duration of the reservation of wife's future spousal support rights and its failure to limit the equitable distribution award pertaining to husband's Hunton & Williams SRP to the marital share of the SRP (when and if benefits under this

supplemental retirement plan vest).  The final decree is reversed as to those issues, and we

remand the matter to the trial court for further proceedings consistent with this opinion.[22]

Affirmed in part,
reversed in part,
and remanded.

---

[22] Given the uncertain nature of an award under the SRP – the Executive Committee may decline to make an award to husband, or husband may refuse to sign a non-compete agreement upon retirement – the trial court is not instructed to reconsider spousal support at this time.  If and when the Hunton & Williams Executive Committee has made an SRP award to husband, the trial court should then reconsider whether any spousal support should be paid or changed at that time, provided that it has retained the necessary authority to do so through a reservation of wife's future spousal support rights.