COURT OF APPEALS OF VIRGINIA

Present:   Chief Judge Decker, Judge Beales and Retired Judge Bumgardner[*]
Argued at Richmond, Virginia

UNPUBLISHED

MARY CARTER McCONNELL

v.        Record No. 0107-19-2

JAMES HOGE TYLER McCONNELL, JR.

MEMORANDUM OPINION[**] BY
JUDGE RANDOLPH A. BEALES
JULY 30, 2019

FROM THE CIRCUIT COURT OF ORANGE COUNTY
William H. Shaw, III, Judge Designate

Seth J. Ragosta (John Rinehart Bryant; Lenhart Pettit PC; Flora
Pettit; Rinehart, Butler, Hodge, Moss & Bryant, P.L.C., on briefs),
for appellant.

John B. Simpson (MartinWren, P.C., on brief), for appellee.

Mary Carter McConnell ("wife") appeals the October 24, 2018 final decree of divorce of

the Circuit Court of Orange County awarding her a divorce from James Hoge Tyler McConnell,

Jr. ("husband") and addressing matters of equitable distribution and spousal support. Husband

assigned cross-error, alleging that the trial court erred when it concluded that he had gifted the

home and property where the couple resided during the marriage to the marital estate.

I. BACKGROUND

Husband and wife were married on August 30, 1985, and separated on October 20, 2012,

after a twenty-seven-year marriage. There are no children from the marriage.

_____

[*] Retired Judge Bumgardner took part in the hearing and decision of this case by
designation pursuant to Code § 17.1-400(D).

[**] Pursuant to Code § 17.1-413, this opinion is not designated for publication.

Husband is an heir of the DuPont family and the beneficiary of several family trusts. The evidence at trial established that, without invading the principal of any of these trusts, husband's income during the majority of the marriage was approximately $1 million per year.

Although husband did not produce any income during the marriage through employment that generated tax withholding, testimony from husband and wife established that husband had considerable knowledge and experience with the stock market and in investing. Husband, who testified that he had been interested in investing since shortly after he graduated from college, managed investment accounts for friends and family members during the parties' marriage. The trial court found that it was "clear from trial testimony that Husband has been a sophisticated investor since before the marriage."

Wife, who was completing her doctorate when the parties met, worked briefly as a college professor for several years after the parties married. The trial court found that her "total gross earnings during the marriage likely did not exceed $40,000.00" and that her only other source of income was annual gifts from husband's mother and stepfather, which she deposited into the parties' joint checking account. Wife stopped working completely a few years after the parties married, a decision that the trial court found was made by mutual agreement.

After an eight-day trial in March 2017, the trial court awarded wife a divorce based on the parties' separation for more than one year. In addition, the trial court addressed equitable distribution of the parties' property and spousal support. While a number of assets were addressed by the trial court in the distribution, at issue in this appeal is the trial court's assignment to husband of the entirety of the appreciation in value of his Merrill Lynch account and the entirety of the appreciation in value of his Berkshire Hathaway stock as well as the trial

court's division of the value of the parties' marital residence, "Summer Duck Wood." Wife also appeals as inadequate the trial court's award to her of $17,500 per month in spousal support.[1]

## The Merrill Lynch Account

The evidence presented at trial demonstrated that the Merrill Lynch account was established through husband's separate funds – namely from gifts and income from trusts of which husband was a beneficiary. At trial, wife sought to prove that, although the account was established with husband's separate funds, the increase in the value of the account was marital property pursuant to Code § 20-107.3(A)(3)(a) because the account experienced "substantial appreciation" as a result of husband's "personal efforts" employed during the marriage. See Code § 20-107.3(A)(3)(a).

On the issue of whether the account experienced "substantial appreciation," wife relied on the testimony and reports of R. Jeffrey Malinak, her expert witness. Malinak stated that husband's account appreciated $659,264 from December 1989 through October 2012. He testified that, in his opinion, no benchmark should be used to measure whether the appreciation of husband's Merrill Lynch account was substantial or, if a benchmark must be used, that the performance of the account should be compared with the performance of a Treasury bill.

Husband relied on the testimony of his expert witness, Peter Tuz. Tuz opined that the account appreciated $467,290 between 1997 and 2013. He testified that, in order to determine how well the account performed, he needed to use a benchmark from which he could measure the performance of the fund, and he stated that the S&P 500 index was the "most commonly used benchmark in investing." He testified that husband's Merrill Lynch account underperformed the

---

[1] We view the evidence regarding the Merrill Lynch account, the Berkshire Hathaway stock, and the spousal support award in the light most favorable to husband because he prevailed on those issues before the trial court. Wright v. Wright, 61 Va. App. 432, 451 (2013). Similarly, we view the facts regarding Summer Duck Wood in the light most favorable to wife because she prevailed on that issue before the trial court.

S&P 500, noting in his July 1, 2015 report that in a fifteen-year period (beginning in 1997), the S&P 500 had a compound average return of 6.50%, while husband's Merrill Lynch account experienced only a compound average return of 3.96%.

In its June 7, 2018 letter opinion, which was incorporated into the final decree, the trial court concluded that it could not use a benchmark of zero to measure the increase in value of the account because Code § 20-107.3(A)(3)(a) requires that the asset experience "substantial appreciation" – not just a mere increase – before income from separate property can become marital. The trial judge found that "[b]ecause the composition of the Husband's account more closely approximates the composition of the S&P 500, than it does any other suggested measuring tool," the S&P 500 was the "proper measuring tool" for determining whether the account had substantially appreciated. The trial judge found that if the account had outperformed the S&P 500, that increase above the index would have been marital, but because it had not, the increase in the account was "passive appreciation" – i.e., the result of "market or other passive forces" – not from husband's efforts.[2] Therefore, the trial court concluded that the increase in value of the Merrill Lynch account was not marital property and designated it entirely as husband's separate property.

<u>The Berkshire Hathaway Stock</u>

Husband testified that he first invested in Berkshire Hathaway in 1983, prior to the parties' marriage, when he purchased ten shares of the stock. He testified that he had been following Berkshire Hathaway for almost two years prior to that point and that he had been

---

[2] The trial court did not make any findings about whether husband expended "significant personal effort" in his management of the Merrill Lynch account. The trial judge simply found that "*assuming* that Husband expended significant personal effort in his management of the Merrill-Lynch Account, no part of the increase in value of the Merrill-Lynch account is marital property because the increase was not 'substantial.'" (Emphasis added.)

reading books and magazine articles about Warren Buffett, Berkshire Hathaway's principal. He stated that he continued to buy the stock in "10-share lots" over time with plans to hold it. He testified that he formed the intention to purchase 100 shares between 1980 and 1983, before he even made his first 10-share purchase, and explained that the shares had to be purchased over time because 100 shares were not available for purchase through the market at the time. Wife also testified about husband's interest in Buffett prior to their marriage. She stated that he had written her a letter in which he "explained the brilliance of Warren Buffett" and how he wanted her "to know about Warren Buffett and this new form of investing."

At one point during the marriage, husband had accumulated a total of 120 shares of Berkshire Hathaway stock. Of the 120 shares, 30 had been purchased before the marriage and 90 had been purchased by husband during the marriage using his separate funds. Husband testified that in 2005, he sold 90 of the shares of the stock in order to pay off a loan from SunTrust for which the stock had been collateral. He testified that this was "effectively an involuntary sale" resulting from the "collateral . . . becoming less than acceptable by the bank" because of the falling value of the stock at the time. At the time of trial, husband still possessed 30 shares, and he testified that he kept the stock certificates for them in his safe deposit box.

It is undisputed that husband's Berkshire Hathaway stock performed extremely well over the length of the marriage. The trial judge noted, "Mr. Malinek estimated that the increase in value of Husband's Berkshire Hathaway stock was $8,400,000.00 as of October 2012. Mr. Tuz noted that the gross return on the 2005 sale of 90 shares of Berkshire Hathaway Stock to pay a debt was $6,668,896.00 ($7,113,655.00 less costs of $ 444,759.00)." At trial, wife argued, as she had with the Merrill Lynch account, that the increase in value of the Berkshire Hathaway stock was marital because its appreciation was the result of husband's significant personal efforts. The trial court rejected wife's argument and found that husband did not expend significant personal

efforts on the Berkshire Hathaway stock during the marriage.  It designated the shares and their appreciation as husband's separate property.

<u>"Summer Duck Wood"</u>

Summer Duck Wood was comprised of six connected parcels containing a total of 1,566 acres in Orange County and had an agreed value of $6,800,000.  The parcels of property that comprised Summer Duck Wood were acquired over the course of the marriage, and it served as the parties' residence during the majority of the marriage.  The largest portion of the property was acquired by the parties in 1988 and then additional, smaller parcels were added in 1989, 1996, and 2010.[3]  The evidence presented at trial established that each of the parcels was acquired by the parties as tenants by the entirety except for a 1996 deed to a 0.6626-acre parcel.  That parcel had previously been purchased and conveyed solely to husband.  Husband then caused a "Deed of Gift" to be executed conveying the property to himself and wife as tenants by the entirety "for and in consideration of their love and affection."

While acknowledging that property acquired during the marriage is generally presumed to be marital, the trial court concluded that husband had successfully retraced the source of the funds for the acquisition of the parcels to his separate property.  However, the trial court ultimately found that Summer Duck Wood was marital property because husband had gifted the property to the marital estate.  It awarded Summer Duck Wood to husband and ordered him to pay wife $2,250,000 for her share of the marital property.

Wife testified at length before the trial court regarding the horses and dogs that the parties kept at Summer Duck Wood.  The trial court found that "[a]ll of the animals were acquired

---

[3] The trial court's letter opinion states that a deed for approximately 14 acres was acquired on May 2, 1986, whereas the record shows that this deed is dated May 2, 1996.  Both dates were after the parties' marriage in 1985.

during the marriage and both parties were intensely involved in their breeding and development for several years." The trial court determined that the animals were marital property and awarded them all to wife in exchange for her payment to husband of one-half of their value. It also permitted her to choose to retain some but not all the animals and adjust the payment to husband accordingly.

### Spousal Support

At trial, wife testified that she estimated that she had a total of $40,950 in monthly expenses. She testified that this amount would allow her to maintain a new farm that she planned to buy in order to continue the horse breeding program that she began at Summer Duck Wood. In its letter opinion, the trial court addressed each of the statutory factors in Code § 20-107.1(E) and awarded wife $17,500 per month for an indefinite period.

## II. ANALYSIS

"In reviewing an equitable distribution award on appeal, we have recognized that the trial court's job is a difficult one, and we rely heavily on the discretion of the trial judge in weighing the many considerations and circumstances that are presented in each case." Klein v. Klein, 11 Va. App. 155, 161 (1990). "Accordingly, 'decisions concerning equitable distribution rest within the sound discretion of the trial court and will not be reversed on appeal unless plainly wrong or unsupported by the evidence.'" Wright v. Wright, 61 Va. App. 432, 450 (2013) (quoting McDavid v. McDavid, 19 Va. App. 406, 407-08 (1994)).

### The Appreciation of the Merrill Lynch Account

The trial court found that the appreciation in value of the Merrill Lynch account was husband's separate property because it found that wife did not satisfy her burden to prove that the increase in value in the account was "substantial." On appeal, wife contends that the trial court erred "by finding that a benchmark [namely, the S&P 500] was required to establish

substantial appreciation under Va. Code § 20-107.3 and that therefore the increase in value of Husband's investment holdings was not substantial under the statute."

Code § 20-107.3(A)(3)(a) provides the framework for wife's assignment of error. It states, in relevant part:

> In the case of income received from separate property during the marriage, such income shall be marital property only to the extent it is attributable to the personal efforts of either party. In the case of the increase in value of separate property during the marriage, such increase in value shall be marital property only to the extent that marital property or the personal efforts of either party have contributed to such increases, provided that any such personal efforts must be significant and result in substantial appreciation of the separate property.

> For purposes of this subdivision, the nonowning spouse shall bear the burden of proving that (i) contributions of marital property or personal effort were made and (ii) the separate property increased in value. Once this burden of proof is met, the owning spouse shall bear the burden of proving that the increase in value or some portion thereof was not caused by contributions of marital property or personal effort.

The Supreme Court addressed Code § 20-107.3(A)(3)(a) in David v. David, 287 Va. 231 (2014), where it considered whether Mrs. David should share in the appreciation in value of Mr. David's separate property, an "Investment/Brokerage" account, that occurred during the marriage. Id. at 234. The trial court had concluded that the increase in the value of the account was marital and divided it between the former spouses. Id. at 235. On appeal, a panel of this Court reversed the trial court, ruling "that [Mrs. David], the non-owning spouse, had failed to carry her burden of proving that the substantial appreciation in the value of the account, approximately $316,000, was proximately caused by [Mr. David's] significant personal efforts during the marriage, and was therefore marital property." Id. at 234. The Supreme Court reversed the panel of this Court, holding that Code § 20-107.3(A)(3)(a) "does not require the non-owning spouse to prove causation." Id. at 239. The Supreme Court explained that, after "the non-owning spouse makes

a prima facie showing of a spouse's personal efforts during the marriage . . . and an increase in value of the separate property," the statute "places the burden of disproving causation on the owning spouse." Id.

The Supreme Court remanded the case back to this Court, which applied the prescribed burden-shifting analysis. David v. David, 64 Va. App. 216, 221 (2015). This Court concluded that Mrs. David had met her burden of proving that the account had experienced a substantial increase, noting that substantial appreciation "is not a term of art." Id. at 222. It reasoned that the "increase in the account from $234,783 to $551,521 speaks for itself" and that the "trial court could rely on the financial statements showing the significant growth in the account's value to reach a conclusion that the appreciation during the marriage was significant for purposes of Code § 20-107.3(A)(3)(a)." Id. This Court also found that Mrs. David had proved that Mr. David had expended personal efforts in managing the account, but remanded the case back to the trial court to determine whether Mr. David met his burden of proving "that the increase in the value of the account was attributable to something other than his own efforts, such as appreciation due to market forces." Id. at 221.

Here, the trial court found that the S&P 500 was an appropriate benchmark because it found that the outperformance of the S&P 500 would "reflect[] something other than market or other passive forces" while any increase in the account that did not surpass the S&P 500 would reflect only "passive appreciation . . . i.e., such appreciation would be the same appreciation to the account as if Husband did nothing." By defining "substantial appreciation" as active appreciation (i.e., only that appreciation realized through husband's personal efforts), the trial court impermissibly placed the burden on wife, the non-owning spouse, of proving that husband *caused* the account's appreciation in value. See David, 287 Va. at 239.

However, even assuming that wife did meet her burden of proving that the account substantially increased in value and that husband expended significant personal effort on the account, the trial court did not err in concluding that the increase in the value of the account was not marital because husband showed that his efforts *did not cause* the substantial increase. The trial court stated that it "accept[ed] Mr. Tuz['s] conclusion that Husband has not outperformed the market [as measured by the S&P 500] by his management of the Merrill-Lynch Account" and that any increase in value of the account below the increase of the S&P 500 was "passive appreciation" or "*the same appreciation to that account as if Husband did nothing*." (Emphasis added.) Code § 20-107.3(A)(3)(a) does not mandate any specific method that a trial court must use to determine whether the appreciation in an account is the result of the owning spouse's efforts or simply of passive appreciation, leaving that decision to the trial court's discretion. Here, the trial court relied on Tuz's testimony that the S&P 500 was the most commonly used benchmark in investing and that it was suitable for the evaluation of husband's account in light of the composition of the portfolio of investments in the account. The trial court adopted that benchmark in its discretion, finding that husband's account "more closely approximates the composition of the S&P 500, than it does any other suggested measuring tool," and we will not reverse that finding of fact on appeal. Thus, the trial court did not err in deciding that the appreciation in the Merrill Lynch account is husband's separate property. The trial court's factual findings illustrate that husband met his burden of disproving wife's argument that his personal efforts actually caused the appreciation of the Merrill Lynch account.

The Appreciation of the Berkshire Hathaway Stock

Wife argues that the trial court erred in concluding that husband did not exert significant personal effort in managing the Berkshire Hathaway stock. She argues that it was error for the trial court to accept husband's "self-serving, uncorroborated, illogical and inconsistent testimony

that his acquisition of the Berkshire Hathaway stock was simply the result of a plan he made before the marriage to buy 100 shares and that he never gave any further thought to the issue beyond that over the course of twenty-seven years." She also contends that husband's decision to hold onto the stock for a majority of the marriage – rather than to frequently buy or sell it – was significant personal effort because that decision came from husband's "mental effort," including his "detailed review and maintenance" of his investments and his "utilization of significant, highly technical resources."

"It is well established that the trier of fact ascertains a witness' credibility, determines the weight to be given to their testimony, and has the discretion to accept or reject any of the witness' testimony." Street v. Street, 25 Va. App. 380, 387 (1997) (*en banc*). "Where, as here, a court hears evidence *ore tenus*, its findings are entitled to the weight of a jury verdict, and they will not be disturbed on appeal unless plainly wrong or without evidence to support them." Gray v. Gray, 228 Va. 696, 699 (1985).

While the trial court acknowledged that husband "possessed the intelligence, knowledge and skill to participate in market activities," it credited husband's testimony that he had researched and formed his plan to purchase the Berkshire Hathaway stock prior to the date of the marriage. It found that husband had purchased 30 shares of the stock before the marriage, but could not buy more at that time because more shares were not available and thus husband's continued purchases of the stock during the marriage "was essentially maintenance and not significant personal effort." Deferring to the trial court in determining witness credibility, we cannot say that its findings are plainly wrong or without evidence to support them.

Furthermore, the trial court did not find, as wife asserts it did, that husband "never gave any further thought" to the continued purchase of Berkshire Hathaway stock during the marriage. On the contrary, the trial court recognized that husband continued to monitor and buy the stock

after the parties married. However, it found husband's monitoring of Berkshire Hathaway during the marriage in connection with his pre-marital plan to buy 100 shares of the stock was not significant personal effort, but rather simple maintenance of a plan that he had already developed and put into action before the marriage. "'[C]ustomary care, maintenance, and upkeep' of separate property does not qualify as significant personal efforts. In the context of a stock account, routine adjustments to the portfolio – adding to stocks that are performing well and culling underperforming stocks – does not constitute significant personal effort." David, 64 Va. App. at 223 (alteration in original) (citations omitted) (quoting Martin v. Martin, 27 Va. 745, 755 (1998) (en banc)). We cannot say that the trial court erred in finding that husband simply performed mere maintenance after his marriage on the Berkshire Hathaway stock in accordance with his pre-marital plan. Therefore, we find no error in the designation of the appreciation of the value of that stock as husband's separate property.[4]

### The Trial Court's Treatment of the Berkshire Hathaway Stock and Merrill Lynch Account as Separate Assets

Wife contends that the trial court erred by treating the Berkshire Hathaway stock and the Merrill Lynch account as separate assets "in a way that provided justification for denying Wife's claims in one way for part of the investment portfolio and in another way for another part." She argues that the separate treatment of these assets is especially problematic given that "the majority of both pieces existed at trial *within the same Merrill Lynch investment account*."

---

[4] Wife also argues that "the trial court erred by finding that significant efforts must involve actually manipulating the company represented by the stock itself, rather than address the overall nature of Husband's activities and the resulting determinations that he made which resulted in extraordinarily successful investment returns." While the trial court did find that husband did not increase the value of the Berkshire Hathaway stock because he "was not an officer[,] director, or employee" and because he "did not attend meetings, or otherwise have any connection with the asset," we do not reach this issue because the trial court's first reason – that husband did not exert significant personal effort because he was acting according to the plan he formed prior to the marriage – is sufficient for our decision.

In its letter opinion, the trial court noted wife's position that these two assets should be treated together as one asset. However, the court stated that it could not treat them as one asset because "Husband has maintained them as separate assets." This finding is supported by credible evidence in the record. Husband testified he kept his Berkshire Hathaway stock certificates in his safe deposit box, and his discovery responses to wife listed the stock as a separate asset from the Merrill Lynch account.[5]

Significantly, both parties' experts, Tuz and Malinak, in their presentations to the court, addressed these assets separately. Wife's own expert, Malinak, treated the Berkshire Hathaway stock and the Merrill Lynch account as separate assets in his reports and oral testimony. Malinak provided figures for each asset with respect to their appreciation during the marriage, addressing each asset in a different subsection of his report. Given that wife's own expert treated these assets in this manner, the trial court did not abuse its discretion in treating them separately in its analysis and opinion as well.

<u>The Division of the Value of "Summer Duck Wood"</u>

In his cross-assignment of error, husband argues that the trial court erred in finding that Summer Duck Wood was a gift to the marital estate "where Wife's belated, inconsistent,

---

[5] Wife contends, without any reference to the record, that "the majority of both pieces [Merrill Lynch investments and Berkshire Hathaway stock] existed at trial *within the same Merrill Lynch investment account*." However, the evidence presented at trial was that husband's remaining Berkshire Hathaway stock was kept in the form of physical stock certificates, which were located in his safe deposit box. While husband stated that he kept some Berkshire Hathaway class B stock in the Merrill Lynch account, that stock is not at issue in this appeal. Wife's assertion, therefore, presumably refers to her belief that, through a series of transactions beginning with the 2005 sale of 90 Berkshire Hathaway shares to pay off a loan from SunTrust Bank and ending with a transaction in 2012 involving a trust that had been established by husband's late mother, husband ultimately deposited $5 million of what was essentially proceeds of the 2005 sale of the stock into his Merrill Lynch account. Even if the trial court believed wife's argument that it was the proceeds from the sale of the Berkshire Hathaway stock that were eventually deposited in 2012 into the Merrill Lynch account, we cannot ignore the trial court's factual finding that husband "maintained them as separate assets" – and the fact that both experts, including wife's own expert, treated the assets as separate.

contingent, and fallback theory was that it was gifted to her, not the marital estate." Primarily, husband argues that wife only argued the theory that Summer Duck Wood was a gift as a "contingent, fallback theory" and that "[b]y making her primary theory that Summer Duck Wood was marital because her own and marital funds were used to acquire it, Wife necessarily, on her own, rendered her contingent and back-up gift theory doubtful and uncertain as a matter of law." (Emphasis omitted.)

Husband's argument ignores the well-settled principle that a party is permitted to argue alternative theories. See Hoar v. Great E. Resort Mgmt., Inc., 256 Va. 374, 382 (1998) ("It is the rule in Virginia that a litigant 'may plead alternative facts and theories of recovery' and 'state as many separate claims or defenses as he has regardless of consistency.'" (quoting Rule 1:4(k))). While wife testified that she deposited the money that she earned as a professor and that she received as gifts into the parties' SunTrust account, wife's trial counsel also argued that the evidence established that Summer Duck Wood was a gift to the marital estate such that she should share in its value.[6] The trial court did not abuse its discretion in permitting wife to argue these alternative theories.

Husband also argues that wife failed to prove each element of a gift by clear and convincing evidence. "[T]o establish the existence of a gift, wife was required to prove, by clear and convincing evidence, the following three elements: '(1) the intention on the part of the donor to make the gift; (2) delivery or transfer of the gift; and (3) acceptance of the gift by the donee.'" Robinson v. Robinson, 46 Va. App. 652, 665 (2005) (*en banc*) (quoting Theismann v. Theismann, 22 Va. App. 557, 566, aff'd on reh'g en banc, 23 Va. App. 697 (1996)). The first

---

[6] Husband contends that wife's argument to the trial court was that Summer Duck Wood was a gift to *wife* and not to the marital estate. However, the record illustrates that, while wife occasionally framed her argument in this manner, her contention was clearly that husband had gifted the property to the marital estate for the parties to share as joint tenants by the entirety – not that he ever intended to relinquish his interest in the property to her alone.

element of a gift, donative intent, is a factual determination for the trial court. Cirrito v. Cirrito, 44 Va. App. 287, 305 (2004).

Here, the trial court made numerous findings of fact to support its ultimate conclusion that Summer Duck Wood was a gift to the marital estate. The trial court found the manner in which the various properties were acquired and titled was probative. It noted that each of the parcels was titled in the names of both husband and wife as tenants by the entirety, which, while certainly not dispositive or presumptive, can be evidence to support a finding that it was a gift. Rowe v. Rowe, 24 Va. App. 123, 137 (1997). In the June 7, 2018 letter opinion, the trial judge noted that husband had purchased a 0.6626-acre parcel in 1995 and executed a Deed of Gift of this property to himself and wife as tenants by the entirety in 1996. The judge found that, in addition to this deed, which clearly showed intent to make a gift of this parcel, husband's efforts to put all the land in both parties' names throughout the marriage was evidence of his donative intent as to Summer Duck Wood as a whole. The judge stated "that at the different times of acquisition Husband consistently caused the Summer Duck Wood properties to be jointly titled for the benefit of both parties as marital property, best illustrated by causing the Deed of Gift to be executed which, in my view, informs [husband's] donative intent with respect to the ownership of Summer Duck Wood, generally, not just that singular parcel." The judge also noted that husband was experienced in real estate matters and yet "did not in any way limit the consequence or effect of the conveyance of Summer Duck Wood into the marital estate."

The trial court also credited wife's testimony suggesting that husband had wanted to share Summer Duck Wood with her. Specifically, the trial judge believed her testimony that husband had rejected an offer from wife to sign a prenuptial agreement and her testimony that husband had told her that he wanted to share the property that was to be their marital residence

with her and not do as his siblings, who had reportedly opted not to share their separate assets with their spouses.

The trial court also found it significant that husband held out to others that the property belonged to both husband and wife – not to husband alone. The trial court found that husband held out to his mother, who had loaned him money for the purchase of Summer Duck Wood's core parcel, that the property would belong to both him and wife. In a November 1988 letter, he stated, "Again, Mary and I thank you for assisting us by making this loan so that *we* could purchase the land in Orange County." (Emphasis added.) In addition, in an August 15, 1989 letter, he wrote, "Again, Mary and I than(sic) you very much for extending this one year loan to *us* so that *we* could purchase the farm in Orange County, Virginia." (Emphasis added.)

In addition, the trial court considered the fact that the property was used as the marital residence and that at the time the parcels were acquired and improved upon, "the marriage was then loving and close."

Given these factual findings, which are supported by credible evidence in the record, we cannot say that the trial court's finding that husband intended to gift the property to the marital estate was plainly wrong. Furthermore, the trial court did not err in finding that the remaining elements of a gift – acceptance and delivery – were present.

Spousal Support

Wife argues that the trial court erred in awarding her "only $17,500 per month" because that amount is "insufficient to provide her with any semblance of the lifestyle to which she was accustomed [ ] during the parties' marriage, especially when balanced against Husband's vast wealth, and thus, ability to pay."

"In fixing the amount of the spousal support award, . . . the court's ruling will not be disturbed on appeal unless there has been a clear abuse of discretion. We will reverse the trial

court only when its decision is plainly wrong or without evidence to support it." Moreno v. Moreno, 24 Va. App. 190, 194-95 (1997) (quoting Gamble v. Gamble, 14 Va. App. 558, 574 (1992)). "Where th[e] evidentiary foundation exists and the record discloses that the trial court 'has given due consideration to each of [the statutory] factors,' we will not disturb its determination as to spousal support on appeal." Miller v. Cox, 44 Va. App. 674, 679 (2005) (second alteration in original).

In this case, the trial court considered each of the statutory factors in Code § 20-107.1(E) and included factual findings regarding each of the factors in its letter opinion, including even noting when it found that no evidence had been presented on a particular factor. While wife challenges the amount of the spousal support award provided to her, she does not challenge the trial court's individual findings used to determine the award. The trial court certainly accepted wife's position that she needed spousal support, finding that although she was educated, she had not worked outside the home since the 1990s and that she was unlikely to receive income from any other source. It recognized the parties' "lavish standard of living" but also noted that "they did not live beyond their means to afford their life style." The trial court also considered the fact that wife was being awarded "a sizable liquid award for her interest in marital property" and that her request for expenses "include[d] the cost of caring for the animals, on her assumption that she would gain ownership of them." Based on the evidence in the record and the letter opinion's illustration of the trial court's careful consideration of each of the statutory factors required for setting an award, we cannot say that it abused its discretion in awarding wife $17,500 per month.

## Attorney's Fees

Wife requests appellate attorney's fees, arguing that the husband's cross-assignment of error was not made in good faith. "In determining whether to make such an award, the Court of Appeals shall not be limited to a consideration of whether a party's position on an issue was

frivolous or lacked substantial merit but shall consider all the equities of the case." Rule 5A:30(b)(3); see also O'Loughlin v. O'Loughlin, 23 Va. App. 690, 695 (1996). After considering the record in this case, we deny wife's request for appellate attorney's fees.

III. CONCLUSION

In short, the trial court did not err in finding that the appreciation of the Merrill Lynch account was husband's separate property. It found that, given the composition of the investment portfolio in the account, its performance should be measured against the S&P 500 – and that the account underperformed when compared with that benchmark. Both of these findings of fact are supported by credible evidence in the record. The trial court did not err in its ultimate conclusion that the increase in value of the Merrill Lynch account was not marital property because husband demonstrated that market forces – not his personal efforts – caused the increase in the account.

The trial court also did not err in determining that the increase in value of the Berkshire Hathaway stock was not marital. The trial court found that husband had conducted research and formed a plan to purchase the stock prior to the marriage and that any effort he made during the marriage was simply maintenance consistent with his original plan, which was conceived and put into place prior to the marriage. These findings are supported by credible evidence in the record, and we cannot say they are plainly wrong.

We also conclude that the trial court did not abuse its discretion in treating the Merrill Lynch account and the Berkshire Hathaway stock as two separate assets. Both husband's and wife's experts submitted reports and provided testimony to the trial court that treated them as separate assets, essentially inviting the trial court to treat them separately as well.

On the last equitable distribution matter at issue in this appeal, we certainly cannot say that the trial court erred in finding that Summer Duck Wood was a gift from husband to the marital estate. The trial court pointed to numerous pieces of evidence that supported its finding of fact that

husband had the donative intent to make a gift of Summer Duck Wood to the marital estate, including the fact that he repeatedly made efforts over a number of years to have the property titled in both their names as tenants by the entirety and that he even executed a "Deed of Gift" to wife and himself for a parcel that was initially in his name alone. The trial court also found circumstantial evidence of husband's donative intent in his holding out to his family and friends that Summer Duck Wood belonged to both parties, and it credited wife's testimony that husband had rejected the idea of a prenuptial agreement and that he had indicated to her his desire to share the property with her. In light of the trial court's numerous stated reasons supporting its finding of fact of husband's donative intent, we find no error in its determination that he gifted the property to the marital estate.

With respect to wife's assignment of error regarding spousal support, the trial court considered each of the required statutory factors in Code § 20-107.1(E) and actually cited the evidence in the record relevant to each factor. On appeal, we do not simply reweigh the trial court's determination, and we conclude that it did not abuse its discretion in awarding her $17,500 per month.

Finally, we deny wife's request for attorney's fees incurred in this appeal.

For all of these reasons, we affirm the decision of the trial court.

<u>Affirmed.</u>