COURT OF APPEALS OF VIRGINIA

Present: Judges O'Brien, Malveaux and Frucci
Argued at Richmond, Virginia


ANN M. ISBELL

MEMORANDUM OPINION[*] BY
v.      Record No. 1542-24-2      JUDGE MARY BENNETT MALVEAUX
OCTOBER 14, 2025

CURTIS W. ISBELL


FROM THE CIRCUIT COURT OF THE CITY OF RICHMOND
C.N. Jenkins, Jr., Judge

Robert L. Isaacs (Robert L. Isaacs & Associates, on briefs), for
appellant.

Richard L. Locke (Shannon S. Otto; Locke Family Law; Shannon
Otto Law, PLLC, on brief), for appellee.


Ann M. Isbell ("wife") appeals the circuit court's final decree awarding her a divorce

from Curtis W. Isbell ("husband"). On appeal, she argues that the circuit court erred in

determining the values of the marital residence and husband's separate interest in the residence,

and failing to credit wife for her separate interest in the residence. Wife also challenges the

circuit court's classification of husband's annuity as part marital and part separate, contending

that she should have been given a monetary award for her interest in marital personal property,

and asserts that the circuit court should have awarded her spousal support.[1] We affirm in part

and reverse in part the circuit court's judgment and remand for further proceedings consistent

with this opinion.

---

[*] This opinion is not designated for publication. *See* Code § 17.1-413(A).

[1] Husband cross-assigned error to the circuit court for failing to award him appreciation
on his separate contribution to the marital residence. However, he withdrew that assignment of
error in his brief to this Court.

## I. BACKGROUND[2]

When reviewing a circuit court's decision on appeal, "we view the evidence in the light most favorable to the prevailing party, granting it the benefit of any reasonable inferences." *Shah v. Shah*, 70 Va. App. 588, 591 (2019) (quoting *Congdon v. Congdon*, 40 Va. App. 255, 258 (2003)).

Husband and wife married in 1996. In May 2021, husband moved out of the marital residence. That same month, the parties cross-filed for divorce. Before trial, the parties stipulated that certain items were marital property, including a 2008 Mercedes-Benz, a 2012 Toyota Tundra, several pieces of farming equipment, firearms, knives, and a Jerry trailer.[3]

### A. The Evidence at Trial

In 2023, the circuit court conducted a trial to resolve the issues of divorce, equitable distribution, spousal support, costs, and attorney fees. We discuss below the relevant evidence respecting the parties' property.

#### 1. Husband's Bradco Stock

Husband worked for Bradco Supply from 1984 until his retirement in 2010. In 1993, he purchased "just over $12,000" worth of Bradco stock through a company program for its employees. In 2005, husband purchased an additional $10,000 worth of Bradco stock. Husband sold his Bradco stock in 2007. The parties' tax return for that year showed that the 1993 shares sold for $213,200 and the 2005 shares sold for $224,000. Husband placed the proceeds into two CD

---

[2] The record in this case was partially sealed. "To the extent that this opinion discusses facts found in sealed documents in the record, we unseal only those facts." *Brown v. Va. State Bar ex rel. Sixth Dist. Comm.*, 302 Va. 234, 240 n.2 (2023). Additionally, given wife's specific challenges to the circuit court's judgment, we limit our recitation to relevant evidence.

[3] The parties agreed that they should keep their respective vehicles.

accounts until the end of 2007. For the year 2007, the parties owed a total of $104,048 in taxes. Husband paid those taxes using proceeds from the sale of his Bradco stock.

2. The Marital Residence

In 1999, the parties purchased their marital residence for $250,000. Wife used $25,000 from her pre-marital savings for a downpayment, and the parties took out a mortgage for the balance of the purchase price. In the mid-2000s, the parties refinanced twice and took out a new mortgage on the home in the amount of $300,000. Husband testified that he paid off the mortgage in late 2007 using proceeds from the sale of his Bradco stock.

Wife stated husband never told her he would pay off the mortgage and instead told her that he "didn't see any reason to pay it off" because the CDs were earning a significant amount of interest. Wife testified that in 2008, husband removed the money from the CDs, deposited it in a joint stock trading account, and then engaged in stock trading until 2010. She stated that she was concerned husband would lose the money in the stock market. After wife expressed these concerns, husband ceased stock trading and used the trading account proceeds to pay off a mortgage the parties had taken out in 2009.[4]

At trial, wife called Alex Uminski, a certified property appraiser, to testify as an expert regarding the value of the marital residence. Husband objected that Uminski's 2021 appraisal was outdated and contended that, pursuant to Code § 20-107.3, the circuit court was required to determine the value of the marital residence as of the date it heard evidence on the issue. He also argued that the residence had "appreciated significantly as evidence[d by] the tax assessments." Wife countered that any remoteness of the appraisal went only to the weight of the evidence. She also argued that any tax assessment was "not evidence of value" and "the tax assessor's

---

[4] Husband testified that he began stock trading in 2008 using money from his checking account, which could have included what remained of the Bradco stock proceeds after he paid the parties' taxes and paid off the mortgage.

evaluation [was] not admissible into evidence" unless the assessor would "come in [to court] and give his opinion." The circuit court ruled that it would consider the 2021 appraisal as to the weight of the evidence.

Uminski estimated that the home's market value, as of the date of his 2021 appraisal, was $440,000. The condition of the home was a significant factor in Uminski's appraisal; he noted that there was only "a makeshift kitchen in the basement," evidence of water leakage, moisture damage, and other issues. Uminski did not have an opinion about the value of the property on the date of trial but stated that there was an "inventory shortage in th[e] area" and agreed that property values in the area had increased since his appraisal. During cross-examination, when asked by husband whether he looked at tax assessments when conducting an appraisal, Uminksi responded, "[o]nly to determine the tax liability." Wife then objected to a question by husband that implicitly compared the appraised value of the home in 2021 to the tax-assessed value for that year. Husband asserted that the 2021 tax assessment was relevant because it "is a determination by the City of Richmond as to the value of this property." Wife further responded that husband was improperly eliciting "hearsay statements and opinion information." The circuit court overruled wife's objection. It also admitted, over wife's objection, a document that listed the property tax assessments for the marital residence from 1998 through 2024 and showed an assessed value of $582,000 for 2023.

3. Husband's Prudential Annuity

When husband began working at Bradco, the company offered an "ESOP" retirement program that Bradco contributed to yearly until 1987. At that time, Bradco began offering a 401(k) plan and husband contributed 15% of his income to his 401(k) through payroll deductions. Husband continued contributing at that rate until his retirement in 2010. In 2007, husband sold the stock held in his ESOP for $375,000 and rolled the proceeds directly into his

- 4 -

401(k).  When husband retired, he used his 401(k) to purchase an annuity with Prudential worth $1,240,000.[5]

### 4.  Items of Personal Property

Wife continued to reside in the marital residence at the time of trial.  The only item of personal property within the home that wife requested was a grandfather clock that she had inherited.  When husband left the marital residence, he took only his guns and clothing.  The only other items he requested from the home, which was fully furnished, were a Stickley chair that had belonged to his mother, a gun safe, and family photographs.  Husband otherwise disavowed any interest in the remainder of the personal property in the home.  According to husband, the personal property at the marital residence included, among other things, a camera he purchased for wife for several thousand dollars, an $11,000 stove still in its box, two recliner chairs originally purchased for $2,500 each, and other furniture.

### B.  Final Decree

In August 2024, the circuit court entered a final decree granting wife a divorce on grounds of desertion and abandonment by husband.  The court found that husband purchased certain Bradco stock shares before the marriage and sold these shares in 2007 for $213,200.  It also found that during the marriage, husband purchased additional shares of Bradco stock for $10,000 and sold the shares in 2007 for $224,000.  These sets of shares "encompass[ed] all the Bradco stock."

The circuit court found that the parties had each contributed $25,000 towards a $50,000 downpayment on the marital residence.  Noting that "[t]he property tax assessments show[ed] the value of the marital residence rising steeply since the appraisal," and considering the 2023 tax

---

[5] Husband initially opened the annuity with approximately $7,675 from "old IRA money" he accumulated prior to the marriage; husband did not contribute to this IRA during the marriage.  The next year, he invested an additional $1,225,541.

assessment valuing the property at $582,000, the court determined that Uminski's appraisal was "too low." The court determined that the value of the marital residence was $582,000. It also found that husband paid $300,000 from the proceeds of the Bradco stock towards the parties' mortgage and credited him with an equal amount of separate interest in the residence. The court deemed the remainder of the value of the residence to be marital property.

Additionally, the circuit court found that approximately 60% of husband's Prudential annuity was marital property and the remainder was husband's separate property. The court awarded wife the Mercedes-Benz and grandfather clock, and awarded husband the Toyota, Jerry trailer, farming and construction equipment, guns and gun safe, Stickley chair, and husband's family photographs. The court granted wife's request to reserve her right to seek spousal support but denied her request for a specific monetary award.

After entry of the final decree, wife filed a motion to reconsider. No action was taken on the motion.

This appeal followed.[6]

## II. ANALYSIS

### A. The Marital Residence

1. The Residence's Valuation

Wife argues that the circuit court erred in admitting the tax assessment document and using it to determine the value of the marital residence because it was inadmissible hearsay opinion evidence.

---

[6] After noting her appeal to this Court, wife moved the circuit court to stay its judgment pending resolution of her appeal. The court issued a temporary order of stay with respect to only those portions of the final decree ordering sale of the marital residence and making an award of the Prudential annuity.

"In rendering its equitable distribution judgment, a trial court must first determine property 'ownership and value,' including legal title, and then classify the property as either marital, separate, or partially both." *Payne v. Payne*, 77 Va. App. 570, 595 (2023) (quoting Code § 20-107.3(A)). "'[T]he value of property is an issue of fact, not of law,' [and] we are bound by this finding on appeal, unless it is plainly wrong or without evidence to support it." *Patel v. Patel*, 61 Va. App. 714, 722 (2013) (citation omitted) (quoting *Howell v. Howell*, 31 Va. App. 332, 340 (2000)). In addition, "[a]ppellate courts 'review a trial court's decision to admit or exclude evidence using an abuse of discretion standard and, on appeal, will not disturb a trial court's decision to [admit] evidence absent a finding of abuse of that discretion.'" *Chaney v. Karabaic-Chaney*, 71 Va. App. 431, 434 (2020) (quoting *Harman v. Honeywell Int'l, Inc.*, 288 Va. 84, 92 (2014)). "[A] trial court 'by definition abuses its discretion when it makes an error of law.'" *Id.* (quoting *Shooltz v. Shooltz*, 27 Va. App. 264, 271 (1998)).

Any out-of-court statement offered to prove the truth of the matter asserted is hearsay and, unless subject to a recognized hearsay exception, is inadmissible. Va. R. Evid. 2:801(c), 2:802. Specifically relevant here, tax assessment records offered to prove the value of a residence constitute hearsay and are inadmissible unless a recognized exception to the hearsay rule applies. *Gelber v. Glock*, 293 Va. 497, 512-13 (2017); *see also Smith v. Woodlawn Constr. Co.*, 235 Va. 424, 431-32 (1988). Although there is a broader hearsay exception permitting the admission of certain public records, that exception "does not render *opinions* contained within the hearsay automatically admissible." *Gelber*, 293 Va. at 513; Va. R. Evid. 2:803(8). A hearsay declaration which also contains opinion evidence must satisfy both requirements to be admissible. *Gelber*, 293 Va. at 513.

A property's tax assessment records "contain[] the expert opinion of the public official as to the [property's] value." *Id.* at 514. Our Supreme Court has held that "[t]he admission of

hearsay expert opinion without the testing safeguard of cross-examination is fraught with overwhelming unfairness to the opposing party." *Id.* (quoting *McMunn v. Tatum*, 237 Va. 558, 566 (1989)). "No litigant in our judicial system is required to contend with the opinions of absent 'experts' whose qualifications have not been established to the satisfaction of the court, whose demeanor cannot be observed by the trier of fact, and whose pronouncements are immune from cross-examination." *Id.* (quoting *McMunn*, 237 Va. at 566).

Here, husband offered, and the circuit court admitted into evidence, the tax assessor's valuation of the marital residence in 2023 as $582,000; the court then accepted the truth of the matter asserted in the tax assessment when it found precisely that value for the residence. This is exactly the type of hearsay evidence prohibited by *Gelber*, when, as here, the assessor's qualifications have not been established to the satisfaction of the court, their demeanor cannot be observed during testimony by the trier of fact, and their pronouncements are immune from cross-examination. And although husband asserts that wife identified the tax assessment on her exhibit list, and thus invited the error she now complains of, that contention is not persuasive. An intended exhibit does not become evidence until it is introduced and accepted by the circuit court. Wife maintains, as she did in the circuit court, that the document was included in her exhibit list because she had been paying the property taxes. She also steadfastly objected to admission of the tax assessment as proof of valuation. Accordingly, we see no invited error by wife.

The circuit court abused its discretion in admitting and using the hearsay tax assessment as proof of the value of the marital residence. Accordingly, we reverse the circuit court's valuation of the marital residence and remand for the circuit court to reconsider the residence's value.

2. Husband's Separate Interest in the Marital Residence

Wife argues that even if husband had a separate interest in the marital residence, the circuit court erred in determining the amount of his separate interest. Specifically, she contends that the court found that the parties realized $437,200 from the sale of the Bradco stock but erroneously decided that the entire proceeds of the sale attributable as husband's separate contribution, rather than a mix of separate and marital contributions.

This Court will not overturn an equitable distribution award unless we find "an abuse of discretion, misapplication or wrongful application of the equitable distribution statute, or lack of evidence to support the award." *Dixon v. Dixon*, 71 Va. App. 709, 717-18 (2020) (quoting *Anthony v. Skolnick-Lozano*, 63 Va. App. 76, 83 (2014)). "Because making an equitable distribution award is often a difficult task, 'we rely heavily on the discretion of the trial judge in weighing the many considerations and circumstances that are presented in each case.'" *Sobol v. Sobol*, 74 Va. App. 252, 272 (2022) (quoting *Howell*, 31 Va. App. at 350). Additionally, "[b]ecause the trial court's classification of property is a finding of fact, that classification will not be reversed on appeal unless it is plainly wrong or without evidence to support it." *Wright v. Wright*, 61 Va. App. 432, 451 (2013) (quoting *Ranney v. Ranney*, 45 Va. App. 17, 31-32 (2005)). "Moreover, '[i]t is well established that the trier of fact ascertains a witness' credibility, determines the weight to be given to their testimony, and has the discretion to accept or reject any of the witness' testimony.'" *Id.* at 450 (quoting *Street v. Street*, 25 Va. App. 380, 387 (1997) (en banc)); *see also Khalid-Schieber v. Hussain*, 70 Va. App. 219, 234 (2019) (same).

Separate property is defined in Code § 20-107.3(A)(1) to include property acquired by a party before the marriage and "property acquired during the marriage in exchange for or from the proceeds of sale of separate property." And "property acquired by each party during the marriage which is not separate property" is categorized as marital. Code § 20-107.3(A)(2).

- 9 -

However, property may also be classified as "hybrid" property. *Hamad v. Hamad*, 61 Va. App. 593, 602 (2013). "Hybrid property involves a mixture of 'part marital property and part separate property.'" *Id.* (quoting Code § 20-107.3(A)(3)). "The party seeking to segregate the separate property bears the burden of proof to equitably trace the truly separate component." *Id.* "If a preponderance of the evidence fails to do so, the property remains fully marital." *Id.*

Here, husband purchased Bradco stock in two tranches: one acquired before the marriage and one acquired during the marriage. Because husband's 1993 purchase of Bradco stock occurred before the marriage, the sale proceeds of those shares constituted husband's separate property. Code § 20-107.3(A)(1). Husband testified that when the tranches of stock were sold, they were placed into two CDs, which were later cashed out, and that $300,000 of the sale proceeds were used to pay off the parties' mortgage on the marital residence. Wife disputed husband's version of events, but it was within the circuit court's discretion to credit husband's testimony. *Wright*, 61 Va. App. at 450. Considering that husband bought some stock before the marriage, the circuit court's finding that husband had at least some separate interest in the marital residence is not plainly wrong or without evidentiary support. *Id.*

But the circuit court also concluded that the Bradco stock purchased in 2005 was husband's separate property. The evidence does not support this classification. *Wright*, 61 Va. App. at 450-51. Purchased during the marriage, the 2005 Bradco stock was presumptively marital property unless husband proved it was separate property. *Hamad*, 61 Va. App. at 602; Code § 20-107.3(A)(2). Husband failed to do so. Husband's testimony about the 2005 Bradco stock did not show that he used separate, rather than marital, assets to purchase the stock. The 2005 Bradco stock was thus marital property, and husband should have only been awarded a separate interest in the marital residence based on the $213,200 proceeds from the sale of the Bradco stock husband acquired in 1993. The circuit court's classification of the Bradco stock husband

purchased in 2005 was thus without supporting evidence, and resulted in a misapplication of the equitable distribution statute. *Dixon*, 71 Va. App. at 717-18.

3. Wife's Separate Interest in the Marital Residence

Wife contends that the circuit court erred by failing to award her a separate interest in the marital residence based on her downpayment on the home. We agree. The parties both testified that wife made the $25,000 downpayment on the marital residence using pre-marital money. Further, there was no evidence that wife ever withdrew her interest in the residence. Accordingly, the circuit court plainly erred in finding that husband contributed to the downpayment on the marital residence and in failing to credit wife with a separate interest in the marital residence. *Wright*, 61 Va. App. at 450.

B. Marital Personal Property

Wife contends that the value of the marital personal property split between the parties in the final decree was vastly different and, therefore, the circuit court abused its discretion by failing to grant her a monetary award for her interest in that property. We disagree.

Code § 20-107.3(D) allows, but does not require, a circuit court to grant a monetary award when conducting an equitable distribution. "[T]he term 'equitable distribution' does not mean 'equal distribution.'" *Marion v. Marion*, 11 Va. App. 659, 663 (1991) (quoting *Artis v. Artis*, 4 Va. App. 132, 137 (1987)). Here, the circuit court considered the factors listed in Code § 20-107.3(E) before reaching its decision. Other than the specific personal property awarded to husband, wife retained control over the personal property within the marital residence. The circuit court had this fact before it for its consideration when determining whether a monetary award to wife was appropriate. Therefore, we cannot say that the circuit court abused its discretion in failing to award wife a monetary award for her interest in the marital personal property. *Sobol*, 74 Va. App. at 272; *Dixon*, 71 Va. App. at 717-18.

- 11 -

## C. Husband's Prudential Annuity

Wife argues that the circuit court erred in classifying husband's Prudential annuity as part marital and part separate because husband failed to provide sufficient evidence to trace his separate interest. Wife contends the entire asset should be considered marital property. We disagree.

Before the marriage, husband had a Bradco ESOP retirement account that he sold in 2007 for $375,000, rolling the proceeds over into his Bradco 401(k). In 2009, husband opened the Prudential annuity with approximately $7,675 of pre-marital IRA money. The next year, husband invested his Bradco 401(k) into the annuity. Crediting husband's testimony, the money from the ESOP and IRA accounts constitutes a traceable separate interest for husband within the Prudential annuity. Code § 20-107.3(A)(3)(d)-(e). Wife contends that husband's tracing was insufficient because he failed to provide documentation to support his testimony. But husband's testimony itself was evidence the court as the trier of fact chose to credit. *Wright*, 61 Va. App. at 450. So, the circuit court's classification of the Prudential annuity as part separate and part marital property was not plainly wrong or without evidentiary support.[7] *Id.*

## D. Spousal Support

Wife argues that the circuit court abused its discretion when it declined to award her spousal support. She contends that despite her demonstrated need for monthly support, and husband's demonstrated ability to pay, the court erred by "ignor[ing] the actual income and expenditure differential between the parties."

"[W]here an equitable distribution award is reversed on appeal and 'the provisions with regard to the marital property are to be considered on remand, the court must necessarily re-examine spousal support in the light of whatever new or different considerations flow from the additional

---

[7] Wife does not argue that even if husband had a separate interest in the Prudential annuity, the trial court improperly valued that interest. Accordingly, we do not reach the question of the exact amount of husband's separate interest in the Prudential annuity.

- 12 -

proceedings.'" *Robinson v. Robinson*, 46 Va. App. 652, 671 (2005) (en banc) (quoting *McGinnis v. McGinnis*, 1 Va. App. 272, 277 (1985)). Here, the circuit court erred in its equitable distribution with respect to the valuation of the marital residence and the determination of the parties' respective interests in the marital residence. "[B]ecause we reverse the equitable distribution award and remand for reconsideration," the circuit court must reexamine spousal support in light of its additional equitable distribution proceedings; therefore, we must also reverse the spousal support ruling and "direct the trial court, on remand, to reconsider the issue of spousal support." *Id.*

## E. Appellate Attorney Fees

Both wife and husband seek an award of attorney fees and costs in connection with this appeal, although neither party offers a rationale for such an award. "Pursuant to Rule 5A:30, in specified cases in which attorney[] fees and costs are recoverable under Title 20 of the Code of Virginia, the Court of Appeals may award some or all of the fees and costs requested or 'remand the issue to the circuit court . . . for a determination thereof.'" *Dixon*, 71 Va. App. at 722 (alterations in original) (quoting Rule 5A:30(a), (b)). "Whether to award fees and costs is discretionary," and "[i]n determining whether to make such an award, the Court may consider factors including whether the requesting party has prevailed, whether the appeal was 'fairly debatable' or frivolous, and whether other reasons exist to support an award of attorney[] fees and costs." *Id.* (quoting *Brandau v. Brandau*, 52 Va. App. 632, 642 (2008)); *see also* Rule 5A:30(a) (providing that "if a judgment is affirmed in part or reversed in part . . . costs will be allowed as ordered by this Court"). Additionally, Rule 5A:30(b)(2)(C) "specifically directs this Court to 'consider all the equities of the case.'" *Dixon*, 71 Va. App. at 723. Here, after reviewing all the factors set out in Rule 5A:30, applicable case law, the issues raised, and after reviewing the record, we exercise our discretion to decline to award attorney fees and costs to either party.

- 13 -

### III. CONCLUSION

For the foregoing reasons, the circuit court's judgment is affirmed in part and reversed in part. We remand the case to the circuit court for further proceedings consistent with this opinion.

*Affirmed in part, reversed in part, and remanded.*